SAMUEL KRAUSE, ADMINISTRATOR, ETC., v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.

*Life insurance—Evidence—Matters within knowledge of decedent —Cancellation of policy—Payment of premium.*

1. An insurance solicitor who has contracted with the general agent of a life insurance company to devote his entire time to the work of procuring applications for insurance, which, with the advance premiums, he is to forward to the agent or the company, and who is to receive as his compensation a brokerage on the premiums of such risks as, in the opinion of the president of the company, he has been instrumental in securing, is disqualified, under 3 How. Stat. § 7545, from testifying in behalf of the company, in a suit brought to recover insurance so solicited, to matters which, if true, must have been equally within the knowledge of the assured.[1]

---

[1] As bearing upon the construction of that portion of 3 How. Stat. § 7545, which provides that, when any suit or proceeding is prosecuted or defended by the heirs, assigns, devisees, legatees, or personal representatives of a deceased person against a corporation or its assigns, no person who is or has been an officer or agent of any such corporation shall be allowed to testify at all in relation to matters which, if true, must have been equally within the knowledge of such deceased person, see:

*Singer Manufacturing Co. v. Benjamin,* 55 Mich. 330, 332, holding that, in replevin by a corporation for property held by the administrator of a deceased agent, a former agent of the corporation is disqualified from testifying in its behalf to negotiations had by him with the deceased, in behalf of the common employer, relating to the property in dispute.

For cases bearing upon the construction of that portion of 3 How. Stat. § 7545, which provides that, when any suit or proceeding is prosecuted or defended by any corporation, the opposite party, if examined as a witness in his own behalf, shall not be admitted to testify at all in relation to matters which, if true, must have been equally within the knowledge of a deceased officer

2. Where the general agent of an insurance company, acting for himself, advances to the company the first annual premium, and accepts the note of the assured for the amount as his own, the condition of the policy requiring the premium to be actually paid before the company shall be liable is sufficiently complied with, and the company cannot cancel the policy without notifying the assured, and returning the unearned premium; citing *Insurance Co. v. Curtis*, 32 Mich. 402.

3. It is held, upon the facts as stated in the opinion, that plaintiff's right to recover upon the original policy issued to the decedent, and claimed to have been delivered to the defendant for the purpose of making the premiums payable quarterly, instead of annually, should have been submitted to the jury.

Error to Wayne. (Hosmer, J.) Submitted on briefs February 14, 1894. Decided March 27, 1894.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

---

or agent of the corporation, and not within the knowledge of any surviving officer or agent thereof, see:

1. *Rayburn v. Lumber Co.*, 57 Mich. 273, 275, holding that in a suit against a lumber company to recover for handling logs, in which the corporation defendant seeks to set off rent due on a lease assigned to it by a firm to whose interests it succeeded, the plaintiff cannot testify to the admissions and statements of a deceased officer of the corporation.

2. *Lyttle v. Railway Co.*, 84 Mich. 289, holding that the statute does not apply to the testimony of the plaintiff in a negligence case against a railroad company to an interview with the defendant's yard-master, since deceased, in the presence of the master of the round-house, who survives him.

3. *Baumann v. Salt & Lumber Co.*, 94 Mich. 363, 365, holding that the statute disqualifies a claimant against the estate of an insolvent corporation for money loaned on the credit of its president, since deceased, and claimed to have been received by the corporation, from testifying to a conversation with the president tending to establish the claim.

For cases bearing upon the question of the waiver of the provisions of the statute, see *Bank v. Butler Estate*, 98 Mich. 381, and note; and see *Kimball v. Kimball*, 16 Mich. 211, 215, holding that the word "equally," as employed in the statute, does not relate to the degree of knowledge possessed by the parties, but is used in the sense of "alike," and precludes the party's evidence where the facts to which he is called were known to both; and *Brennan v. Railroad Co.*, 93 Mich. 156, holding that the statute, in so far as it refers to officers or agents of a corporation, includes only those who are authorized, in the matter with reference to which the testimony is given, to act for the corporation.

*Edward A. Gott* (*Alfred Russell,* of counsel), for appellant.

*John Atkinson,* for defendant.

McGRATH, C. J.   Plaintiff, as administrator of the estate of Benjamin S. Krause, sues . upon a policy of insurance issued September 12, 1889.

Plaintiff's evidence tended to show that the policy was actually issued; that defendant's solicitor accepted the assured's note at 60 days for the amount of the premium, and receipted for such premium; that the note so accepted was turned over to the general agent of the company, who held it, and paid the full premium to the company; that the note was not paid at maturity; that the assured then requested the general agent to make the premium payable quarterly, instead of annually, and delivered the policy to such agent for the purpose of the change; that on March 6, 1890, defendant's general agent wrote to a brother of the assured, who was then acting for the assured, as follows:

"Your favor of the 5th received. Your demand for the policy, if the full annual premium is paid, is reasonable and right. There has been a misunderstanding in regard to this matter. Will explain briefly. Your brother applied for a policy with annual payments. The policy was issued and delivered. I paid the full premium to the company, and the agent his commissions, accepting your brother's note. He was unable to pay the full premium, and requested policy changed to quarterly premiums, and promised he would pay the quarterly premiums as they matured. The policy has been at this office ever since, uncalled for. The policy forfeited after his refusal to pay the second quarter. The company is ready to reinstate the policy if health certificate is furnished. Until that is done, we cannot deliver the renewal. The policy is of no value until the second quarterly premium is accepted by the company. As the matter now stands, if your brother refuses to furnish health certificate, we can only demand

payment of the first quarterly premium of $12.91, as he was only insured for three months."

That in March, 1890, the note was sent on for collection, and paid in full on March 13, 1890; that, when the second annual premium became due, the amount thereof was tendered to defendant; that the assured died December 15, 1890, and proofs of death were furnished to the company.

Upon these facts the case should have gone to the jury. There was no competent testimony that the policy was delivered up for the purpose of cancellation, and that another and different contract of a later date was to be substituted, and a health certificate required. The change from an annual to a quarterly premium did not necessitate a new policy. So far as appears, the contract was to be a continuing one. The delivery of the policy to the company was conditional, and the condition was not complied with. The note was not surrendered, nor was the unearned premium refunded. It is true that the assured was in default upon the note, but it was retained, and afterwards collected. It is insisted that the company did not collect the note. But it was collected by the agent of the company, without notice to the assured that it was being collected on individual, and not on company, account. The company had received the premium in full. In *Home Insurance Co. v. Curtis*, 32 Mich. 402, it was understood when the insurance was effected that credit was to be given for the premium, and the agents received a note from the assured, and themselves paid the premium. There, as here, there was testimony tending to show that before the loss the policy had been canceled. The trial court instructed the jury that if the agents, acting for themselves, advanced the premium to the company, and afterwards took the note of the assured for the amount as their own, this was a sufficient compliance with the condition requir-

ing the premium to be actually paid before the company should be liable, and that the company could not cancel the policy without notifying the assured, and returning the unearned premium. This Court held that there was no error in the instructions, adding that, if the company actually received the premium, it was a matter of no sort of consequence who paid it, and the company could not afterwards cancel the policy without notifying the assured, and refunding, or offering to refund, the unearned premium. In the present case the premium receipt recited the giving of the note, and the general agent of the company received the note. The company, therefore, had ample notice of the situation. It did not either refund the unearned premium or deliver up the note.

The testimony of the witness Heffron, so far as it related to matters equally within the knowledge of the decedent, was inadmissible. *Singer Manufacturing Co. v. Benjamin*, 55 Mich. 330. Heffron solicited the insurance, and signed the premium receipt as agent, upon a blank furnished by the company. He was under a contract with the general agent of the company as such. He was to procure applications for assurance, and forward the same to the general agent or the company. He was to receive as compensation a brokerage on the premiums. He was to remit to the general agent or the company. He was not to be entitled to commission on assurances, unless, in the opinion of the president of the society, he had been instrumental in securing the same. He agreed to devote his whole time and energies to the service of the society, etc. It is true that his powers were limited, but the application of the rule does not depend upon the extent of the authority conferred, but upon the relation existing.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.