| 105  329|
| s 109  328|

SAMUEL KRAUSE, ADMINISTRATOR, ETC., v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.

[See 99 Mich. 461.]

*Life insurance—Surrender of policy—Evidence.*

1. In a suit by an administrator upon a policy of insurance payable to the decedent, his executors, administrators, or assigns, the defendant sought to defeat a recovery by proof of the surrender of the policy, and the issuance of a policy payable to certain beneficiaries therein named. And it is held that plaintiff can recover only upon proof of the existence of the first policy, and the question of such alleged surrender was properly left to the jury.

2. A clerk or stenographer in the office of the general agent of an insurance company is not an officer or agent of the company, within the meaning of that portion of 3 How. Stat. § 7545, which provides that when any suit or proceeding is

prosecuted or defended by the heirs, assigns, devisees, legatees, or personal representatives of a deceased person against a corporation or its assigns, no person who is or has been an officer or agent of any such corporation shall be allowed to testify at all in relation to matters which, if true, must have been equally within the knowledge of such deceased person.[1]

3. The mere fact that a life insurance policy is returned to the general agent of the company, and by him to the company, for the sole purpose of changing the terms of the payment of the premiums and the beneficiary, does not operate to cancel the policy, or give the company the right to demand a new health certificate.

4. In a suit by an administrator upon an insurance policy, the main issue of fact involved was whether or not the policy had been surrendered, and a new one issued in its place. The policy sued upon provided for the payment of an annual premium, while the one issued, as claimed by the defendant, on the surrender of said policy, called for the payment of the same premium in quarterly installments, and made the insurance payable to certain beneficiaries therein named. After the negotiations for the change in the policy, the premium note given on the issuance of the first policy was paid, and the plaintiff claimed that such payment established the validity of said policy; that the assured had then the right to treat it as in force, and, having tendered the payment of the second annual premium, the plaintiff was entitled to recover. The testimony on the part of the defendant tended to show that the mistake in collecting the full amount of the note was promptly corrected, the assured notified, and the amount collected, less one quarter's premium, tendered back, and that, at the time of the death of the assured, the defendant held the second policy for delivery to the assured when called for. And it is held that, under such circumstances, the collection of the note cannot be held to have operated as a waiver of the new arrangement, if one was made, and to have conclusively established the restoration of the first policy; and that it was a question for the jury to determine whether, under all of the evidence, such an agreement was made, and whether it was in force.

---

[1]For cases bearing upon the construction of the portion of How. Stat. § 7545, above cited, see *Krause v. Life Assurance Society*, 99 Mich. 461, and note; *Latourette v. McKeon*, 104 Id. 156, and note.

Error to Wayne. (Maxwell, J., presiding.) Argued April 5, 1895. Decided May 21, 1895.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion, and in 99 Mich. 461.

*Atkinson & Haigh,* for appellant.

*Edward A. Gott (Alfred Russell,* of counsel), for plaintiff.

GRANT, J. This case was before us at the January term, 1894. 99 Mich. 461. Upon the second trial plaintiff recovered. The case was submitted to the jury, with the instruction that if they should find that the first policy was surrendered under an agreement to change the beneficiary, and that agreement was carried out and the change effected, the plaintiff could not recover, but that, if this agreement was not carried out, the plaintiff was entitled to recover. After the writing of the letter found in the former opinion, plaintiff wrote two other letters to the agent of the company at Detroit, demanding the delivery of the first policy. In reply to these letters, the general agent, under date of March 25, wrote plaintiff as follows:

"Your brother applied for $1,000 policy, annual premium, for which he gave agent Heffron a note of $48.70. He afterwards came to this office, and informed me that he was not able to carry the insurance, and that he could not pay the premium, and returned the policy. I then proposed that, if he would pay the quarterly premium, I would have the policy changed, and he could pay the premiums quarterly, amount $12.91. He consented to this arrangement. The agreement with him was as follows: I was to hold the note until the return of the policy changed. When advised that the policy was returned to this office, he promised to come in and take possession of it, and pay the quarterly premium, and I would surrender the note. This promise was not complied with. I wrote him at least two letters, advising him that the policy was here for his acceptance. To these letters I never received a reply. I afterwards gave

the note to agent Heffron, and requested him, if possible, to find Krause, and collect the quarterly premium of $12.91, and return him the note, and also to collect the second quarterly premium, provided a health certificate would be furnished by the assured. This is the entire matter and all the instructions that have been given. Mr. Heffron erred in forwarding the note for collection without instructions, as before mentioned. As the case now stands, Mr. Heffron is entitled to only the first quarterly premium of $12.91. The renewals for the second and third quarter cannot be delivered on payment of the premium, only on receipt of a satisfactory health certificate from one of our medical examiners. The attorney has been instructed to return you the money, less $12.91."

Plaintiff testified that his brother told him that he intended to have the policy changed so as to make the payment of premiums quarterly, and the loss, if any, payable to his mother, or, if she did not survive him, to his unmarried sisters. A second policy was made out ·corresponding in all respects with the first, except that the payments were to be quarterly, of $12.91 each, and the loss was made payable to his mother if she survived him, and, if not, to his unmarried sisters. This policy, at the date of his death, was in the hands of the general agent. The amount of the premium of the second policy exceeded the first by $2.94. Practically, however, the premium was the same, the difference being interest. Defendant gave evidence tending to show that Mr. Heffron, the solicitor, had been charged with the amount of the note by Mr. Day, to whom the same had been delivered; that Mr. Day returned the note to Heffron, stating that he had no right to collect any more than the first quarterly premium; that Heffron had been credited back with the amount of the note less such quarterly premium; that Heffron sent the note to an attorney at Ann Arbor for collection, without any other instructions except to collect; that plaintiff, for his brother, paid to the attorney at Ann Arbor the full amount of the note, which amount was offered to Mr. Day, who refused to receive it; that the attorney tendered the amount back to the plaintiff,

who refused to receive it; that at that time the assured was sick with a disease from which he died December 15 following; that defendant charged the first premium for a year to Mr. Day; that, on receiving the first policy and issuing the second, the same was credited back, except the premium for one quarter. The father and mother and the sisters of the deceased assigned all their interest in the policy to the plaintiff, which assignment was forwarded, with proofs of death, to the defendant. A proper tender of the second year's premium was made to the defendant.

1. A valid contract of insurance was consummated by the issuance of the first policy and the acceptance by Day of a note for the premium. The mere fact that the policy was returned to the general agent, and by him to the company, for the sole purpose of changing the terms of payment and the beneficiary, did not operate to cancel the policy, nor give the right to demand a new health certificate. Nor is it claimed by the defendant that a new certificate was required until after default in the payment of the premium. It is, however, insisted on behalf of the plaintiff that the payment of the note on March 13, 1890, after the negotiations for the change in the policy, established its validity; that the deceased had then the right to treat it as in force, and to pay the annual premium for the second year; and that, having tendered it, plaintiff is entitled to recover. We, however, feel compelled to hold otherwise. If the statements of Mr. Day in his letter were true, he had complied with the new arrangement with the assured, and held the second policy for delivery to him when called for. If the defendant's testimony was true, the mistake in collecting the full amount of the note was promptly corrected, the assured notified, and the amount tendered back. Under such circumstances, the collection of the note cannot be held to have operated as a waiver of the new agreement, if there was one, and to have conclusively established the restoration of the first policy. It became, therefore, a

question of fact for the jury to determine whether, under all the evidence, such an agreement was made, and whether it was in force. Plaintiff sued as administrator, and not as assignee. He therefore could recover only upon proof of the existence of the first policy, for the estate of the deceased had no interest in the second policy. The question was therefore properly left to the jury, and it remains to determine whether any error occurred upon the trial.

2. Testimony of a clerk or stenographer in the office of Mr. Day was offered, to show that she was present when the alleged agreement was made between the assured and Mr. Day for a change in the policy, and what it was, and excluded upon the ground that the facts were equally within the knowledge of the deceased, and inadmissible under the statute. This was error. She was not an "officer or agent" of the company, within the meaning of the statute. *Brennan v. Railroad Co.*, 93 Mich. 160. In fact, she was not in the employ of the company, but was an employé of the general agent in Detroit.

3. We think the court committed error in saying to the jury that the defendant insisted upon a new examination for a health certificate, as a condition precedent to the issue and delivery of the second policy. The company could not and did not make such a claim. It only claimed such right in case the assured had defaulted in the payment of his premium, which it insisted it had done. The effect of such default, if any there was, is not now before us, and upon it we express no opinion.

Judgment reversed, and new trial ordered.

The other Justices concurred.