WALDBAUER v. MICHIGAN BEAN CO.

1. EVIDENCE—BINDING ON PARTY CALLING WITNESS.
    Testimony of coroner as to cause of death of employee, based on what others had related to him, held, binding on plaintiff widow in proceeding to recover workmen's compensation, where he was a physician and called by plaintiff, although the testimony was objected to by defendants.

2. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED
—WORKMEN'S COMPENSATION—FELLOW EMPLOYEES.

Testimony of employee who lowered foreman of elevator into
grain bin filled with lethal fumigating gas *held;* competent and
not barred, in widow's proceeding to recover compensation, by
statute prohibiting testimony of officers and agents of opposite
parties as to matters equally within knowledge of deceased
(3 Comp. Laws 1929, § 14219).

3. WORKMEN'S COMPENSATION—PROHIBITED RISK—ACCIDENTS.

A prohibited risk, when voluntarily assumed, with knowledge of
easily apprehended fatal consequences is not an incident of
employment, and an injury so received, is not an accident aris-
ing out of and in the course of employment.

4. SAME—INTENTIONAL AND WILFUL MISCONDUCT—LETHAL GAS IN
ELEVATOR GRAIN BIN.

Action of grain elevator foreman in having himself lowered into
grain bin, filled with a lethal fumigating gas for destroying
vermin, in order to get a sack full of the grain within time
prohibited by reason of safety demands of which deceased had
knowledge *held,* intentional and wilful misconduct barring re-
covery by dependents (2 Comp. Laws 1929, § 8418).

Appeal from Department of Labor and Industry.
Submitted October 16, 1936. (Docket No. 55, Cal-
endar No. 38,677.) Decided December 9, 1936.

Ethel M. Waldbauer, widow, presented her claim
for compensation against Michigan Bean Company,
employer, and Michigan Mutual Liability Company,
insurer, for death of George Waldbauer while in de-
fendant's employ. Award to plaintiff. Defendants
appeal. Reversed.

*E. B. Reese,* for plaintiff.

*L. J. Carey* and *Geo. J. Cooper,* for defendants.

WIEST, J. Plaintiff's husband was foreman of
the elevator plant of defendant bean company at

Saginaw. In the plant were cement bins for storage of grains. Grains were elevated to and poured by spouts into the tops of bins through manholes. In the course of elevation of grains cyanide crystals were added to develop hydrocyanic acid gas in the bin to fumigate the grains and destroy vermin. Safety demanded that for 72 hours after such crystals were added no person should enter the bin, and plaintiff's husband was aware of the prohibition. From time to time, as desired, small samples of grains were taken from bins and, for such purpose, a windlass was placed over the manhole of a bin and a person lowered into the bin.

August 15, 1934, plaintiff's husband directed an employee to lower him into a bin containing rye, in which the poisonous gas-forming crystals had been placed the previous day. He took with him a large bag, into which he scooped 40 pounds of rye, and then seated himself on the stirrup attached to the windlass cable to be hauled up. When he was near the underside of the manhole the employee reached down to take the grain sack and the deceased toppled backward from the seat, fell about 12 feet to the grain in the bin and, when removed about 10 minutes later, was dead, evidently killed by the poisonous gas.

Plaintiff, as the widow and sole dependent of the deceased, applied for compensation which was denied by a deputy commissioner, and awarded by the department upon appeal on the ground that the death was caused by the effects of hydrocyanic acid gas and the accident arose out of and in the course of the employment.

Defendants prosecute review, claiming that the deceased entered the bin to procure grain for his own purpose and, whether so or not, he did not suf-

fer an accidental injury arising out of and in the course of his employment but was guilty of intentional and wilful misconduct.

The coroner, who was also a physician and called by plaintiff, testified that he recorded the death as due to "cyanide acid gas." This was based on what others related to him, but is binding upon the plaintiff, although objected to by defendants.

The employee who lowered the deceased into the bin was called by plaintiff and testified to the happenings on the occasion mentioned. On cross-examination he testified:

"*Q.* And it is while this grain is being transferred from the cupola above to the bins below that it is being treated with this cyanide acid gas for the purpose of destroying any vermin, is that right?

"*A.* Yes, sir.

"*Q.* Now you were present when that system was first installed and the man came from Illinois and installed it and instructed you as to the proper procedure, you were present, and Mr. Waldbauer was present there also?

"*A.* Yes, sir.

"*Q.* You and Mr. Waldbauer—was anybody else there to receive instructions with reference to the treating of this grain?

"*A.* Not at that time.

"*Q.* All right, there were the two of you?

"*A.* Yes, sir.

"*Q.* You and Mr. Waldbauer were instructed at that time as to the proper method to pursue in the treatment of this grain, and informed of the action of the stuff that was put in there, and were instructed that no one should enter, for the purpose of removing samples or any other purpose, any of those bins for a period of 72 hours after that treatment had been put in, is that right?

"*A.* That is right.

"*Mr. Reese:* I object to that as being testimony equally within the knowledge of the deceased, and it is not admissible."

Was the testimony of the employee of the corporation, relative to matters equally within the knowledge of the deceased, barred by the statute, 3 Comp. Laws 1929, § 14219, which provides:

"Nor when any suit or proceeding is prosecuted or defended by the heirs, assigns, devisees, legatees, or personal representatives of a deceased person against a corporation (or its assigns) shall any person who is or has been an officer or agent of any such corporation be allowed to testify at all in relation to matters which, if true, must have been equally within the knowledge of such deceased person."

The witness was an employee and not an officer or agent of the corporation in any respect. His testimony was competent. *Brennan* v. *Railroad Co.,* 93 Mich. 156; *Krause* v. *Equitable Life Assurance Society of the United States,* 105 Mich. 329; *Wallace* v. *Fraternal Mystic Circle,* 121 Mich. 263; *Storrie* v. *Grand Trunk Elevator Co.,* 134 Mich. 297; *Rousseau* v. *Brotherhood of American Yeomen,* 177 Mich. 568.

The department found that:

"Sometime in 1933, the defendant installed a system which injected cyanide crystals into the spout which carried the grain into its bins in the elevator. In the bins the cyanide crystals developed cyanide gas which fumigated the grain and destroyed elements which tended to cause deterioration or destruction of the grain. It was shown that the deceased was present during the installation of this system and must have known of the instructions given concerning its use. If he were not actually

present, it may be reasonably inferred that due to his position he came to know of those instructions."

Accepting the finding by the department that "from all the circumstances, it is a fair inference that the death of the deceased was caused by the effects of the cyanide gas," was the department in error, in point of law, under the undisputed evidence, in also finding "that the accident arose out of and in the course of employment?"

Defendants contend that plaintiff's decedent was guilty of intentional and wilful misconduct in entering the bin during the period he knew the lethal gas was operative.

The department found that:

"Wilful and intentional misconduct cannot be ascribed to the acts of the deceased."

The bin had been filled with grain just the day before and, at the very time the deceased entered the bin, the fact of gas therein was discussed between the deceased and his helper. Entering the bin while the gas was operative as a death-dealing agency was an act of volition on the part of the deceased, contrary to the course of his employment, warned against, and prohibited by every sense of self-preservation. Such an entry involved more than mere negligence; it was intentional and wilful and in reckless disregard of consequences. It was suicidal. A prohibited risk, when voluntarily assumed, with knowledge of easily apprehended fatal consequences is not an incident of employment, and an injury, so received, is not an accident arising out of and in the course of employment. The gas in the bin was lethal, known to be such, for its killing properties were the only reason for its employment.

Plaintiff's decedent was guilty of intentional and wilful misconduct, and compensation is barred by 2 Comp. Laws 1929, § 8418.

What we have said is supported by the opinion and authorities cited in *Gacesa* v. *Consumers Power Co.*, 220 Mich. 338 (24 A. L. R. 675). See, also, *Anderson* v. *Russell Miller Milling Co.*, 196 Minn. 358, (267 N. W. 501), where the same kind of gas was used to fumigate a mill.

The award is vacated, with costs to defendants.

NORTH, C. J., and FEAD, BUTZEL, BUSHNELL, SHARPE and TOY, JJ., concurred. POTTER, J., did not sit.