MAXWELL v PROCTER & GAMBLE

Docket No. 118475. Submitted October 11, 1990, at Lansing. Decided
April 1, 1991, at 10:05 A.M. Leave to appeal sought.

Alexander G. Maxwell sought workers' compensation benefits as
a result of a work-related injury while employed by Alfred F.
Bouchard & Son Greenhouse which was aggravated by employ-
ment with Procter & Gamble. Maxwell had been awarded
specific-loss benefits after his lower left leg was amputated in
1967 as a result of the accident at Bouchard. In 1984, a hearing
referee found the plaintiff to be disabled and ordered Procter &
Gamble to pay benefits for two periods in 1982-1983 because of
aggravation of the condition. The referee also found that the
plaintiff continued to be partially disabled from the 1967 in-
jury, that employment with Procter & Gamble did not reestab-
lish a wage-earning capacity at common labor, and, accord-
ingly, ordered the Accident Fund of Michigan, Bouchard's
insurer, to pay benefits from October 28, 1983, until further
order. The Workers' Compensation Appeal Board affirmed.
Bouchard and the Accident Fund appealed by leave granted.

The Court of Appeals *held:*

Continuing benefits for the plaintiff's disability is the liability
of Procter & Gamble, not Bouchard or the Accident Fund,
because the disability resulted from the aggravation of a preex-
isting condition while the plaintiff was working for Procter &
Gamble.

1. In a case of specific loss less than total disability, the law
of general liability applies when the specified period ends. If
the claimant is unable to resume work done at the time of
injury, the claimant may collect further benefits upon demon-
strating an impairment of wage-earning capacity.

2. Impairment of wage-earning capacity is determined by

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 293, 317, 321, 343-345,
348, 356, 384.

Workers' compensation: liability of successive employers for disease
or condition allegedly attributable to successive employments. 34
ALR4th 958.

Pleading aggravation of a pre-existing physical condition. 32 ALR2d
1447.

comparing postinjury and preinjury ability to compete for jobs within the type of work in which the injury occurred. A postinjury wage-earning capacity is established only where the claimant has accepted regular employment with ordinary conditions of permanency and not where the claimant has accepted favored work.

3. In this case, the plaintiff established wage-earning capacity both at Bouchard and at Procter & Gamble after the specific loss in 1967 by performing regular, nonfavored work. However, the record supports a finding that the plaintiff's employment with Procter & Gamble aggravated a preexisting condition, resulting in disability during the two periods in 1982-1983 and continuing beyond October 28, 1983. Thus, Procter & Gamble is liable for continuing benefits.

Affirmed in part, reversed in part, and remanded.

1. Workers' Compensation — Specific Losses — Continuing Benefits.

A worker who is awarded workers' compensation specific-loss benefits and is unable to resume work done at the time of injury after the period for which specific-loss benefits are payable may collect benefits based on the law of general liability where the worker demonstrates an impairment of wage-earning capacity.

2. Workers' Compensation — Wage-Earning Capacity — Favored Work.

A worker, following an injury for which workers' compensation benefits were awarded, establishes a postinjury wage-earning capacity, which disqualifies him from further benefits, only where the worker accepts regular employment with ordinary conditions of permanency; a postinjury wage-earning capacity is not established where the worker accepts favored work.

*Nelson, Petruska & Allen, P.C.* (by *Michael D. Nelson*), for Alexander G. Maxwell.

*Bensinger, Combs & Cotant, P.C.* (by *Steven C. Byram*), for Florists Mutual Insurance Company.

*James R. Piggush*, for Alfred F. Bouchard & Son Greenhouse and the Accident Fund of Michigan.

Before: Gillis, P.J., and Michael J. Kelly and Neff, JJ.

NEFF, J. A. F. Bouchard & Son Greenhouse and
the Accident Fund of Michigan appeal by leave
granted from an opinion and order of the Workers'
Compensation Appeal Board affirming with modifi-
cation the decision of a hearing referee awarding
benefits to plaintiff Alexander G. Maxwell. We
affirm in part, reverse in part, and remand.

I

On July 31, 1967, while working for Bouchard,
plaintiff suffered an injury to his lower left leg
while operating a Rototiller. The injury resulted in
the amputation of plaintiff's left leg three inches
below the knee. Plaintiff did not work for six or
seven weeks, then returned to his regular work,
wearing an artificial limb. He received specific-loss
benefits. Plaintiff was able to perform all the
duties required of him. During approximately six
months of each year, he drove a truck and made
deliveries. During the other six months, he worked
in the greenhouse. This work required him to
walk, climb, bend, twist, lift, and push a wheelbar-
row. Plaintiff experienced very few problems with
his leg during this period. He left his employment
with the greenhouse on July 22, 1977, apparently
because he developed an adverse reaction to a
chemical substance used in its operations.

In October 1978, plaintiff began working for
Procter & Gamble as a member of its labor pool.
In April 1979, he began working as a convenience-
pack helper in the Pampers division. In July 1980,
he became an operator in the Attends division.
This job involved packing the product in boxes
that moved along a conveyor line, then manually
pushing the boxes onto another line. Plaintiff
could sit part of the time while performing this
job. Initially, plaintiff had no difficulty with this

work. However, at some point, production levels increased dramatically. Plaintiff had to perform a twisting motion and shift his weight to his artificial limb to move the cases along the line. Plaintiff began experiencing problems, including swelling, with his stump. He had to soak the stump in the mornings and put ice on it in order to be able to put on his prosthesis. He developed sores on his leg and experienced swelling and drainage.

In September 1982, plaintiff had surgery on his stump. He returned to work in November 1982. At Procter & Gamble's request, in anticipation of a layoff, plaintiff did not return to the packing job, but instead worked by training other employees. This job was easier on his leg. However, the soreness and drainage never ceased completely. On March 4, 1983, plaintiff was laid off by Procter & Gamble for economic reasons.

Plaintiff's petition named Procter & Gamble and claimed personal injury and occupational disease dates of September 1982 and March 4, 1983. The petition alleged an aggravation of his preexisting condition by repetitive walking, pushing, standing, bending, twisting, climbing, and lifting. Plaintiff's amended petition added Bouchard and claimed injury dates of July 31, 1967, resulting from injury to the lower left leg, and July 22, 1977, resulting from aggravation of a preexisting condition.

Two physicians testified by deposition. Dr. Klaus Hergt, board certified in general surgery and plaintiff's witness, began treating plaintiff in March 1983 and last saw him on October 27, 1983. At the time of his deposition, Dr. Hergt diagnosed chronic infective skin process with the presence of a sebaceous cyst. He attributed the condition to pressure on the stump from the prosthesis. He recommended the use of powder and a stockinet to reduce friction. Dr. Hergt would not have immedi-

ately restricted plaintiff from anything he felt able to do, but left that determination to plaintiff. Dr. Hergt also stated that he considered plaintiff to be reliable in determining how well he could tolerate being on his feet. Dr. H. Ross Hume, a board-certified orthopedic surgeon and defendant's witness, examined plaintiff on July 25, 1983. He opined that plaintiff was experiencing recurring sebaceous cysts and that the condition could be related to some problems with the prosthesis or the components of the prosthesis. He did not believe that the problem was related to plaintiff's work capacity or that plaintiff's work needed to be restricted.

At a hearing held on February 9, 1984, plaintiff testified that he was still having problems with his leg and that he had had additional surgery in December 1983 and on January 25, 1984, to remove cysts. Plaintiff did not think that he could return to the packing job at Procter & Gamble. He also testified that he would have trouble doing the greenhouse work he had performed for Bouchard.

In a decision mailed on May 2, 1984, the hearing referee found plaintiff to be disabled. Procter & Gamble was ordered to pay benefits from September 15, 1982, to November 14, 1982, and from March 5, 1983, to October 27, 1983. The hearing referee found that plaintiff's work for Procter & Gamble had aggravated his condition during these periods, but that he had recovered as of October 27, 1983. The hearing referee further found that plaintiff was still partially disabled from the injury and the amputation on July 31, 1967, and that his work for Procter & Gamble did not reestablish a wage-earning capacity at common labor. Bouchard's workers' disability compensation carrier, the Accident Fund of Michigan, was ordered to pay benefits from October 28, 1983, until further order.

All parties appealed, and, in an opinion and order entered on May 26, 1989, the WCAB affirmed with modification the decision of the hearing referee. The WCAB accepted plaintiff's testimony that he could not return to the packing job he had performed for Procter & Gamble. The WCAB found that the increased production work plaintiff did for Procter & Gamble aggravated his condition and resulted in "cystomatology" [sic] which disabled him for two periods, from September 15, 1982, to November 14, 1982, and from March 5, 1983, to October 27, 1983. The WCAB found that, after October 27, 1983, plaintiff's disability was the same as it had been following the amputation in 1967 and, therefore, Bouchard's workers' disability compensation carrier was liable for continuing benefits.

II

The sole issue on appeal is whether the WCAB erred in finding that Bouchard's workers' disability compensation carrier is liable for continuing benefits because plaintiff was disabled as a result of his original injury and amputation.

This Court's review of a decision by the WCAB is limited. Absent a showing of fraud, findings of fact by the WCAB are conclusive and may not be set aside if they are supported by evidence in the record. Const 1963, art 6, § 28; MCL 418.861; MSA 17.237(861). However, this Court may reverse a decision of the WCAB if it operated within the wrong legal framework or based its decision on erroneous legal reasoning. *Flynn v General Motors Corp,* 162 Mich App 511, 513-514; 413 NW2d 444 (1987).

In order to be entitled to benefits, a plaintiff must establish by a preponderance of the evidence

266 Mich App 260 [Apr

a continuing work-related disability. *Aquilina v General Motors Corp,* 403 Mich 206, 211; 267 NW2d 923 (1978). Causation, as well as whether a plaintiff is disabled, are questions of fact. *Nezdropa v Wayne Co,* 152 Mich App 451, 461; 394 NW2d 440 (1986). The determination of the credibility of both lay and medical witnesses is for the WCAB. *Sanford v Ryerson & Haynes, Inc,* 396 Mich 630, 635; 242 NW2d 393 (1975). Therefore, the WCAB's determination must be affirmed if it is supported by any competent evidence in the record.

In a case of specific loss less than total disability, the law of general liability applies when the specified period ends. If the claimant is still unable to perform the work done at the time of the injury, the claimant may collect further benefits. *Kidd v General Motors Corp,* 414 Mich 578, 589; 327 NW2d 265 (1982). To establish continuing disability, the claimant must demonstrate an impairment of wage-earning capacity. *Id.,* pp 591-592.

The determination whether there is an impairment of wage-earning capacity is made by comparing postinjury with preinjury ability to compete with the able-bodied for jobs within the type of work in which the injury occurred. A postinjury wage-earning capacity is established only where the claimant has accepted regular employment with ordinary conditions of permanency and not where the claimant has accepted favored work. *Powell v Casco Nelmor Corp,* 406 Mich 332, 348; 279 NW2d 769 (1979).

Defendants contend that because the evidence shows that plaintiff had established a postinjury wage-earning capacity, he is not entitled to continuing benefits. After being laid off from work for six or seven weeks in 1967, plaintiff returned to work for Bouchard. He did all duties required of him. No evidence suggests that plaintiff did favored

work for Bouchard. Rather, all evidence suggests that plaintiff returned to his regular duties. As plaintiff testified, he had no trouble performing these duties. Plaintiff worked for Bouchard for ten years after his injury. Moreover, defendants contend that plaintiff's work for Procter & Gamble established a postinjury wage-earning capacity. Plaintiff testified that when he went to work for Procter & Gamble he began in the labor pool and then bid for specific jobs. This was the customary procedure for new employees. No evidence suggests that before September 1982, when he had surgery on his stump, plaintiff did anything other than regular, nonfavored work for Procter & Gamble. Plaintiff testified that he never attempted to secure lighter work because of his condition.

In order to have found that plaintiff was disabled after October 27, 1983, and thus entitled to continuing benefits from Bouchard's workers' disability compensation carrier, the WCAB must have concluded that his postinjury work for Bouchard was favored work. Furthermore, the WCAB must have found, as did the hearing referee, that plaintiff's work for Procter & Gamble was favored work and thus did not establish a wage-earning capacity. There is absolutely no evidence in the record to support such findings. Favored work is generally defined as less strenuous postinjury work offered to an employee to accommodate a disability. Such work does not establish a wage-earning capacity. *Bower v Whitehall Leather Co,* 412 Mich 172, 182; 312 NW2d 640 (1981). No evidence supports a finding that, following his return to work for Bouchard after his injury in 1967, plaintiff did anything other than regular work. Moreover, no evidence in the record supports a finding that, before he left work in September 1982 to have surgery, plaintiff did anything other than regular

work for Procter & Gamble. Accordingly, we reverse the findings of the WCAB that the work plaintiff performed for Bouchard and Procter & Gamble was favored work.

We do, however, affirm the WCAB's finding of disability. An unskilled worker is disabled if he is limited in his ability to compete in the total field of unskilled common labor. *Garvie v Owens-Illinois, Inc,* 167 Mich App 133, 136-137; 421 NW2d 602 (1988). Plaintiff testified at the February 9, 1984, hearing that he could not perform the jobs either at Procter & Gamble or at Bouchard. This evidence is unrebutted and bolstered by Dr. Hergt's testimony. Accordingly, there is evidence to support the WCAB's finding of continuing disability after October 27, 1983. However, there is no factual support for the finding that the aggravation of the preexisting condition ended as of October 28, 1983, and that plaintiff's condition reverted to its preaggravation status.

Because plaintiff established a postinjury wage-earning capacity and because there is no support for a finding that aggravation of the preexisting condition ended as of October 28, 1983, we conclude that the WCAB erred in finding that plaintiff was disabled as a result of his original injury in 1967 and that he was entitled to benefits from Bouchard's workers' disability compensation carrier on a continuing basis. However, because plaintiff remains disabled because of the aggravation of his preexisting condition, he is entitled to continuing benefits from Procter & Gamble.

Affirmed in part, reversed in part, and remanded to the WCAB for entry of an order consistent with this opinion granting plaintiff continuing benefits from Procter & Gamble. On remand, the

WCAB shall also determine the correct amount of benefits to be paid to plaintiff.