EATON v CHRYSLER CORPORATION (ON REMAND)

Docket No. 139552. Submitted January 12, 1993, at Detroit. Decided February 7, 1994, at 10:05 A.M. Leave to appeal sought.

John E. Eaton petitioned the Bureau of Workers' Disability Compensation for a hearing after Chrysler Corporation terminated voluntary payment of workers' compensation benefits for an August 31, 1974, injury sustained in the course of unskilled employment. A referee found total disability continuing from August 31, 1974, and ordered Chrysler to pay weekly benefits and medical expenses until further order, with credit for benefits already paid. Because Eaton's total disability arose from an injury occurring between September 1, 1965, and December 31, 1979, he became eligible for supplemental benefits pursuant to MCL 418.352; MSA 17.237(352). Chrysler appealed to the Workers' Compensation Appeal Board, which affirmed the finding of continuing disability, but concluded that the disability was partial rather than total inasmuch as Eaton, although unable to resume his former position at Chrysler, could nonetheless assume sedentary jobs. The board further determined that, because the disability was partial, Eaton was ineligible for supplemental benefits. MCL 418.352(9); MSA 17.237(352)(9). Eaton sought, but was denied, leave to appeal in the Court of Appeals. The Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for consideration as on leave granted and allowed the Attorney General to intervene as a plaintiff on behalf of the Compensation Supplement Fund. 437 Mich 953 (1991).

On remand, the Court of Appeals *held:*

1. The Workers' Compensation Appeal Board erred in determining that Eaton had sustained only a partial disability. Mere capacity to earn wages, if nondescript, affords no measure of wage-earning capacity unless accompanied by opportunity to obtain suitable employment. If a worker's injury has reduced the worker's capacity to work and relegated the worker to the rating of "odd lot" or "nondescript" workers for whom labor

REFERENCES

Am Jur 2d, Workers' Compensation § 381.
See ALR Index under Workers' Compensation.

openings are extremely limited, then opportunity within the worker's capacity must be made to appear.

2. Eaton's total disability entitles him to supplemental benefits as provided under § 352(1).

Reversed and remanded to the appeal board for computation of benefits.

WORKERS' COMPENSATION — PARTIAL DISABILITY — COMMON LABOR.

An unskilled worker may not be considered to have been partially disabled by a work-related injury solely on the basis of an abstract postinjury ability to perform common labor; opportunity for employment within the worker's reduced capacity must also be shown (MCL 418.351; MSA 17.237[351]).

*Kelman, Loria, Downing, Schneider & Simpson* (by *Rosemary E. Jabbour*), for John E. Eaton.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Ray W. Cardew, Jr.,* Assistant Attorney General, for Attorney General ex rel Compensation Supplement Fund.

*Lacey & Jones* (by *Gerald M. Marcinkoski*), for Chrysler Corporation.

ON REMAND

Before: DOCTOROFF, C.J., and WEAVER and WHITE, JJ.

WHITE, J. Plaintiff appeals from a ruling of the Workers' Compensation Appeal Board, which modified a referee's finding of total disability to partial disability and, on that basis, denied supplemental benefits. The Attorney General joins plaintiff, appealing on behalf of the Compensation Supplement Fund. We reverse and remand for computation of benefits.

Plaintiff was born October 10, 1921. During the 1940s, plaintiff was a professional boxer for five or

six years, but quit after his hands became "brittle." Thereafter, he held various jobs while helping to train other boxers.

Plaintiff began working for defendant in 1969 after a preemployment physical indicated he was in good health. Plaintiff worked primarily as a stock chaser, but also performed janitorial duties, and filled in for absent employees when necessary. Plaintiff's tasks included loading and unloading items on a conveyor belt and unloading forklifts, all of which involved reaching, bending, and lifting.

On August 31, 1974, plaintiff was struck from behind by the forks of a moving forklift, and fell onto the concrete floor, landing on his back. He was taken to the hospital complaining of pain in his ribs, shoulder, hips, back, and legs. The next morning, plaintiff fell while getting up when his right leg "gave out." He continued to have pain in his right hip and lower right back, with intermittent pain radiating into his legs. Plaintiff did not return to work after his injury, and received medical treatment and heat therapy for his symptoms. Defendant voluntarily paid workers' compensation benefits from September 2, 1974, until April 18, 1982.

Plaintiff filed a petition for a hearing on October 26, 1982, alleging continuing disabilities involving his back, neck, hips, head, right shoulder, and lower extremities resulting from the 1974 accident. A trial was held on March 12, 1984, before Referee Arthur J. Coole. Plaintiff testified and medical testimony was presented by deposition.

Frank Cullis, M.D., a physical rehabilitation specialist, testified that he examined plaintiff on December 20, 1974. Plaintiff complained of a persistent headache, constant pain in the right loin and lumbar regions, hip and pelvic pain, and a

need for help getting up in the morning. After a thorough physical examination, Cullis concluded that plaintiff had suffered a compression fracture of the eighth dorsal vertebra as a result of the forklift accident, precipitating symptoms from existing degenerative changes, and leaving plaintiff with radiculopathy (spinal nerve root disease) in the nerve root on the right side. Cullis concluded that plaintiff's symptoms would persist indefinitely, declared him unfit for his previous employment, and advised plaintiff to avoid physical stress on his back, as well as repetitive twisting movements of the spine. Cullis recommended that plaintiff be fitted with a brace, and that he receive physical therapy for the dorsal spine.

Cullis examined plaintiff again on April 8, 1983. He noted that plaintiff complained of continued pain in the upper back and right shoulder, with pain radiating into the right thorax, burning and intermittent numbness in the right upper extremity, intermittent pain in the right lower back, and headaches. Cullis observed that plaintiff limped, favoring the right leg. He found good flexion of the spine, but limited extension and rotation capacities, and pain on percussion. Plaintiff demonstrated full motion capacity in his upper extremities, but a grip deficiency in his dominant right hand. Though plaintiff's lower extremities demonstrated full motion at the joints, he experienced pain when raising his left leg to seventy-five degrees, and his right leg to fifty degrees. Cullis noted "a very high degree of tonus" in the lumbar paravertebral muscles. X-rays of plaintiff's dorsal spine continued to show the original deformity, with added spurring. Cullis concluded that plaintiff's complaints were supported by clinical and radiological findings. In his opinion, plaintiff continued to suffer radiculopathy and persistent lower

back symptoms. Cullis once again recommended physical therapy and a spinal brace. He again advised avoiding physical stress on the spine and repetitive bending and twisting movements of the spine. He also advised against physical stress and repetitive movements involving the right arm. Plaintiff was also to avoid kneeling and climbing, and prolonged standing or walking. Cullis believed plaintiff's symptoms would persist for a prolonged period. He considered plaintiff medically disabled from his position at Chrysler Corporation.

James Horvath, M.D., an orthopedic surgeon, testified that he examined plaintiff on August 21, 1980, at defendant's request. He had no prior medical reports indicating plaintiff's condition. Horvath testified that plaintiff "[did] not give a very coherent history," claiming employment with defendant from 1974 to 1976, with the forklift incident occurring in 1976. Horvath later conceded that plaintiff's incoherence could be due to being "punch-drunk," a result of his former career. Horvath noted complaints of pain in the right arm, shoulder, elbow, ribs, and right buttock, with severe pain in the right upper extremity. He reported that plaintiff's back, legs, and left arm were "fine," with plaintiff maintaining that he had never had a backache. Horvath's examination did not otherwise disclose pain, muscle spasm, or tenderness in plaintiff's ribs or spine, and could not locate the right buttock pain. Though plaintiff complained of a swollen left ankle stemming from the forklift incident, Horvath found no swelling, tenderness, or pain. Horvath observed a normal range of back and leg motion. From x-rays of plaintiff's lumbar spine and right hip taken by Horvath's associates, Horvath observed moderate degenerative changes in the lumbar vertebrae, and moderate calcification of the abdominal aorta, but

a normal right hip with no evident degenerative change. Horvath attributed the degenerative changes in the lumbar spine to the aging process, though he acknowledged that the changes exceeded defendant's age group by five years. He was not provided with dorsal or thoracic spine x-rays. Horvath concluded that plaintiff was not disabled from his usual occupation. Horvath stated that plaintiff could return to any activity suitable to his age and body size without restriction. He conceded that plaintiff's lack of symptoms could result from avoiding work or other symptom-producing activity.

Plaintiff testified to continuing pain in his lower right side just below the belt line, with pain radiating down the bone, though he acknowledged that it was "fair." He stated that he could walk, but his leg would "give out," causing him to fall. He had stinging pain in his right arm and shoulder, and pain and limited motion in his neck. He no longer physically participated in training boxers, though he could issue instructions from a sitting position. Any attempt to participate physically in the training of boxers would leave him "aching for a week." Plaintiff stopped driving after the accident. At home, plaintiff performed light housework, but required assistance with heavier work. On occasion, he rode with a friend who picked up "junk," but did no work and received no pay for his activity.

In a decision mailed September 5, 1984, Referee Coole found that plaintiff had proved a continuing "back/neck" total disability from unskilled labor based on the August 1974 injury date. Defendant was ordered to pay particularized weekly benefits and medical expenses from September 2, 1974, until further order, with credit for compensation already paid. As a totally disabled worker with a

date of injury occurring between September 1, 1965, and December 31, 1979, plaintiff was also eligible for supplemental compensation benefits under MCL 418.352; MSA 17.237(352).

Defendant appealed to the WCAB, claiming plaintiff failed to establish a continuing disability, and disputing the accuracy of the amount of benefits ordered. Defendant did not argue that plaintiff should be found only partially disabled. On September 28, 1989, the WCAB affirmed Referee Coole's finding that plaintiff was disabled on a continuing basis as a result of the August 1974 accident, and, on its own initiative, concluded that plaintiff was partially rather than totally disabled. The WCAB also determined pursuant to that finding that plaintiff was ineligible for supplemental funds, as provided in MCL 418.352(9); MSA 17.237(352)(9), and this Court's July 22, 1988, order regarding *Gamula v General Motors Corp,* 1987 WCABO 2178. *Gamula v General Motors Corp* (Docket No. 106013).

Plaintiff's application for leave to appeal to this Court was denied on March 27, 1990 (NEFF, J., dissenting). Plaintiff then sought leave to appeal to the Supreme Court. The Attorney General, on behalf of the Compensation Supplement Fund, filed a motion to intervene as a plaintiff-appellant. On April 3, 1991, the Supreme Court granted that motion and remanded the case to this Court for consideration as on leave granted, with interested parties allowed to participate as amici curiae. *Eaton v Chrysler Corp,* 437 Mich 953 (1991).

Appellants essentially raise two issues: (1) whether the WCAB erred in determining that plaintiff was partially disabled where he had not been offered favored work or obtained alternative employment after his injury; and (2) assuming that plaintiff is partially rather than totally disabled,

whether he is nonetheless eligible for weekly compensation supplements as an

> employee receiving or entitled to receive benefits equal to the maximum payable to that employee under section 351 . . . whose benefits are based on a date of personal injury between September 1, 1965, and December 31, 1979. [MCL 418.352(1); MSA 17.237(352)(1).]

We hold that the WCAB erred in ruling that plaintiff was partially rather than totally disabled. In light of that holding, we need not address the second issue.

In its opinion, the WCAB gave a detailed account of the testimony of plaintiff and both doctors and then carefully analyzed that testimony. The WCAB's analysis began with the conclusion:

> We believe that plaintiff has proven by a preponderance of the evidence that he is disabled on a continuing basis as a result of the August 31, 1974, work-related event. *Aquilina v General Motors Corp,* 403 Mich 206 [267 NW2d 923] (1978). Further, we find that the injury he suffers continues to preclude him from competing fully in the area of common labor. *Adair v Metropolitan Building Co,* 38 Mich App 393 [196 NW2d 335] (1972). However, we do modify the findings of Judge Coole with regard to "total disability," since we believe plaintiff more rightfully is partially disabled from unskilled employment since he can clearly assume some sedentary positions. *Jacek v Chrysler Corp,* 1984 WCABO 893.

The WCAB then explained:

> Initially, we find the August 31, 1974 event did occur. In fact, this event is not contested by defendant and is supported by unrebutted testimony. . . . [At the] time of hearing plaintiff could walk

but "still had problems" with a "hurting" back, "pain", and "sting" in his arm, shoulder, and back, has trouble sleeping due to the condition, and gets "rub downs" and takes pain pills. We find also, that in addition to the problems that plaintiff now faces with lifting, reaching, and bending as required by his "stock chaser" position, plaintiff has stopped driving since the work event, has limited household activities, and cannot be physically active in training boxers as he did before. We find all of this testimony helps convince us that plaintiff can no longer compete fully in common labor on a continuing basis. *Adair, supra.*

The medical testimony in this instance also supports this finding. We prefer the conclusions of Dr. Cullis for several reasons, but note also that Dr. Horvath's opinion supports plaintiff's claims to some extent.

\* \* \*

Dr. Cullis, noted persistent symptoms in the lower back from a trauma "previously present" and recommended therapy, medication and a brief support. He believed that a "causal relationship" existed between the 1974 incident and plaintiff's existing spine condition of 1983 which caused an aggravation of existing degenerative changes. He reasoned that plaintiff was "medically disabled" from his former position.

The WCAB concluded:

On examining the totality of the evidence, we believe that plaintiff has proven continuing compensable partial disability of the back and neck. *Aquilina, supra; Adair, supra; Jacek, supra.*

The WCAB rejected the testimony of Dr. Horvath, finding Dr. Cullis and plaintiff more persuasive. The WCAB did not explain its finding that, notwithstanding the foregoing conclusions, plaintiff is only partially disabled, except to the extent that it

states that he can do sedentary work and cites *Jacek.* There is no description of the nature of the sedentary work and no finding that such work is available to plaintiff.

The purpose of the Worker's Disability Compensation Act, MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.,* is to compensate an employee for loss of wage-earning capacity due to a work-related injury. *Gasparick v H C Price Construction Co,* 398 Mich 483, 490; 247 NW2d 824 (1976). The act recognizes and addresses both total and partial disability, and in certain specific cases involving the loss of limbs, sight, or sanity, defines those terms. MCL 418.361; MSA 17.237(361). Where the degree of disability is not defined by the statute, it is to be determined by the impairment in wage-earning capacity: by comparing postinjury with preinjury ability to compete with the able-bodied for jobs within the type of work in which the injury occurred. *Kidd v General Motors Corp,* 414 Mich 578, 592; 327 NW2d 265 (1982). That comparison must consider a complex of factual issues concerning the nature of the work performed, the continuing availability of work of that kind, the nature and extent of the employee's disability, and wages earned. *Pulley v Detroit Engineering & Machine Co,* 378 Mich 418, 423; 145 NW2d 40 (1966). According to *Pulley,* wage-earning capacity

> is not limited to wages actually earned after injury, for such a holding would encourage malingering and compensation is not a pension. *On the other hand mere capacity to earn wages, if "nondescript" by reason of injury, affords no measure unless accompanied by opportunity to obtain suitable employment. Opportunity is circumscribed by capacity of the injured and openings to such a wage earner.* [*Id.* at 424, quoting *Hood v Wyandotte Oil & Fat Co,* 272 Mich 190, 192; 261 NW

295 (1935), and *Pique v General Motors Corp,* 317
Mich 311, 316-317; 26 NW2d 900 (1947); emphasis
added. See also *Leizerman v First Flight Freight
Service,* 424 Mich 463, 473; 381 NW2d 386 (1985)].

Appellants argue that the WCAB erred in finding
partial, rather than total, disability when plaintiff
had neither been offered favored work nor ob-
tained alternative employment after his injury.
We agree that on the record presented the WCAB
erred.

The WCAB found that plaintiff had met his bur-
den of proving a reduced earning capacity, and
that the physical incapacities resulting from his
injury affected his ability to earn wages in com-
mon labor. These findings are well supported by
the evidence in the record, and are thus viewed by
this Court as conclusive. *Maxwell v Procter &
Gamble,* 188 Mich App 260, 265; 468 NW2d 921
(1991). However, this Court will reverse a decision
of the WCAB if the WCAB operated within the
wrong legal framework or based its decision on
erroneous legal reasoning. *Id.* We hold that the
WCAB erred in concluding that plaintiff's ability in
the abstract to assume some sedentary positions
rendered his disability partial rather than total.

As already indicated, the mere capacity to earn
wages, if "nondescript" by reason of injury, affords
no measure unless accompanied by the opportu-
nity to obtain suitable employment. See *Hood v
Wyandotte Oil & Fat, supra,* where the Court said:

An injured person may recover to the point
where he can, if favored, perform special service, if
such is obtainable, but if none can be obtained
because of his injury, his capacity to work and
earn cannot be measured against his incapacity. If
his injury isolates him from employment, then, of
course, he is not to be held to have capacity to

work and earn wages. If his injury has reduced his capacity to work and relegated him to the rating of "odd lot" or "non-descript" workers for whom labor openings are extremely limited, then *opportunity, within his capacity, should be made to appear.* [272 Mich 193; emphasis added.]

Here, in determining that plaintiff was disabled from wage-earning in common labor, but that he could assume certain sedentary positions, the WCAB essentially relegated plaintiff to "the rating of 'odd lot' or 'non-descript' workers for whom labor openings are extremely limited." Yet no "opportunity, within his capacity, [has been] made to appear."

We conclude that the WCAB's decision to modify plaintiff's disabled status from total to partial must be reversed because it was not supported by the evidence in the record, and issued from an erroneous legal framework. *Jacek v Chrysler Corp,* 1984 WCABO 893, on which the WCAB relied, far from justifying a determination of partial rather than total disability, does not discuss partial disability at all, but identifies as "total disability" a situation where it is medically ill-advised to return to the work causing the disability. Such is the case here.

We do not believe this Court's decisions in *Juneac v ITT Hancock Industries,* 181 Mich App 636; 450 NW2d 22 (1989), and *Sobotka v Chrysler Corp (On Rehearing),* 198 Mich App 455; 499 NW2d 777 (1993), compel a different result. In *Juneac,* the WCAB found that the plaintiff was partially disabled and awarded weekly benefits and supplemental benefits. The defendants appealed, asserting that the WCAB erred in awarding supplemental benefits. The plaintiff did not contest the WCAB's finding of partial disability. Thus, the only question for decision was whether a partially disabled

worker is entitled to supplemental benefits, a question we do not reach in the instant case. In *Sobotka, supra* at 459, the Court similarly noted that "this case proceeds on the basis that plaintiff is only partially disabled."

Because we have determined that the WCAB's modification from total to partial disability was erroneous, plaintiff is entitled to weekly compensation supplements under § 352(1).

We reverse and remand to the WCAB.