Per Curiam.
 

 Defendant appeals by leave granted from the October 30, 2000, order of the Worker’s Compensation Appellate Commission (wcac) that affirmed the magistrate’s open award of disability benefits. We affirm.
 

 On January 22, 1997, plaintiff sustained a crushing injury during the course of his employment when his
 
 *600
 
 right hand became caught between two bottle carts. Within two weeks of his injury, plaintiff stopped working. He has undergone four surgeries on his hand. Additionally, he has experienced depression, anxiety, and panic attacks since his accident. According to plaintiffs testimony before the magistrate, his panic attacks are triggered whenever he hears anyone mention Meijer or he sees a Meijer logo. He takes antianxiety and antidepression medications. He has also undergone psychiatric hospitalization.
 

 Plaintiff commenced the instant worker’s compensation claim, alleging a disability based on fractured bones in his right hand, as well as depression. In a written opinion dated September 29, 1999, the magistrate concluded that plaintiff suffered from a compensable mental disability arising from his physical iiyury because he suffers from panic attacks whenever is he exposed to anything associated with Meyer. The magistrate further found that plaintiff cannot return to work at Meijer because of his “substantial feelings of anxiety relative to Meijer.” The magistrate also found that this mental disability arose from the actual events of employment that occurred on January 22, 1997, and that work events significantly contributed to plaintiffs mental disability.
 

 The magistrate also found as a matter of fact that plaintiff’s mental disability provided him with reasonable cause for refusing defendant’s bona fide offers of reasonable employment. Finally, the magistrate concluded that plaintiffs disability benefits should be reduced on the basis of a work-avoidance theory. Specifically, the magistrate reasoned as follows:
 

 The final issue in this case is whether the plaintiff’s entitlement to wage loss benefits should be reduced on the
 
 *601
 
 theory of work avoidance. Under
 
 Haske [v Transport Leasing, Inc, Indiana,
 
 455 Mich 628; 566 NW2d 896 (1997)], plaintiff must establish a causal link between work injury and actual wage loss. Defendant may refute the causal link by showing that plaintiff is avoiding work or actual wages. Based on the above analysis, I find that the plaintiff initially established a causal link between work injury and actual wage loss. However, I also find that the defendant presented evidence which severed the causal link as of the date of trial based on the theory of work avoidance.
 

 In arriving at this opinion, I find plaintiff’s claim that he cannot return to work at Mejjer credible. However, I find plaintiffs claim that he cannot return to work with another employer is not credible. Plaintiff has no expert testimony which supports his position that he cannot return to work with another employer. Moreover, the plaintiff testified that his panic attacks can be controlled with medication. These factors suggest that the plaintiff is capable of returning to employment, except at Mejjer.
 

 My finding that the plaintiff is capable of returning to work with another employer, coupled with the evidence provided by defendant’s vocational expert, Ms. Davis, establishes that the plaintiff is avoiding work and/or actual wages. I find that the plaintiff can return to work within the restrictions imposed by Dr. Burke. The plaintiff and his attorney received Ms. Davis’s analysis regarding work available within the plaintiff’s restrictions from Attorney Beidelman in early September. There were several jobs available to the plaintiff, within his restrictions, located within a reasonable distance of his residence. Despite having this information for at least two weeks prior to the trial, plaintiff failed to follow-up on any of these job opportunities. I find that since plaintiff was capable of performing these jobs, had adequate time to look into employment opportunities, yet failed to do so, establishes that the plaintiff was avoiding work as of the date of trial, September 20, 1999. Therefore, I find that the defendant is entitled to a reduction of wage loss benefits as of the trial date. See
 
 Mayse v Wirt Transport Co,
 
 1997 ACO #528.
 

 
 *602
 
 The magistrate further found that work paying $7 to $9 an hour was available to plaintiff, and therefore reduced his award of benefits using an average of $8 an hour. Specifically, the magistrate found that plaintiff was avoiding $320 a week in wages, and therefore reduced plaintiff’s benefits accordingly.
 

 Defendant subsequently appealed to the wcac, arguing that plaintiff’s work avoidance required a total suspension of benefits. Plaintiff cross appealed, arguing that the magistrate’s determination that he was avoiding work was not supported by the record.
 
 [1]
 
 The WCAC affirmed the magistrate’s conclusion that plaintiff’s work avoidance required a reduction, and not a complete suspension, of benefits, opining:
 

 Defendant [argues] plaintiff’s weekly benefits should be suspended altogether. Defendant maintains that its proofs regarding work avoidance go “to entitlement, not rate.”
 
 Haske,
 
 [defendant] states, at footnote 38, equates work avoidance with [MCL 418.301(5)(a)] which says that refusing a bona fide offer of reasonable employment results in suspension, not reduction, of benefits. The footnote in
 
 Haske
 
 reads in part:
 

 “An employer may refute the causal connection between the partial disability and the employee’s unemployment with evidence that other factors are the cause of the unemployment, e.g., an employee’s ailments that are unrelated to his previous employment or malingering. . . . However, where the employer chooses to produce evidence regarding the availability of specific employment, such evidence is admissible solely to refute the causal connection.”
 

 Defendant adds that this rule is in accordance with public policy: “It is consistent with the fact that the statute pays partial benefits to those who actually perform work for
 
 *603
 
 lesser wages is [sic] entitled to differential benefits, but denies all wage loss benefits to those who refuse lesser paying work.”
 

 We read
 
 Haske
 
 differently than does defendant. There were no actual offers of employment in
 
 Haske,
 
 nor was there a demonstration of reasonable employment which either plaintiff was avoiding. We observe that footnote 38 continues by adding this comment, “The result under subsection 301(5)(a), when an employee refuses a reasonable offer of work, is to deny benefits.”
 
 Mayse,
 
 just as the instant case, does not concern any [MCL 418.]301(5)(a) actual offer of employment. Rather, the statutory construction at issue is of [MCL 418.]301(4); Magistrate Quist was satisfied with defendant Meijer’s proofs that there were available jobs that suited plaintiff’s restrictions, which plaintiff was capable of performing.
 
 Mayse
 
 recognizes this dichotomy: refusing an actual offer of reasonable employment [under] (301(5)) carries a greater penalty than failing in general to seek reasonable employment (301(4)).
 

 The WCAC also rejected defendant’s argument that the magistrate erroneously determined that plaintiff’s mental disability arose out of and in the course of employment. Finally, the wcac rejected defendant’s argument that the magistrate misapplied the significant-contribution component of the test enunciated in
 
 Gardner v Van Buren Public Schools,
 
 445 Mich 23, 48-49; 517 NW2d 1 (1994). This Court granted defendant’s application for leave to appeal in an order entered May 24, 2001.
 

 Our review in worker’s compensation cases is limited.
 
 Maxwell v Procter & Gamble,
 
 188 Mich App 260, 265; 468 NW2d 921 (1991). “Our review of the wcac’s findings of fact is extremely deferential,”
 
 George v Burlington Coat Factory Warehouse of Southfield (On Remand),
 
 250 Mich App 83; 645 NW2d 722 (2002), and in the absence of fraud, we must accept
 
 *604
 
 the wcac’s findings of fact as conclusive if there is any competent evidence in the record to support them.
 
 Mudel v Great Atlantic & Pacific Tea Co,
 
 462 Mich 691, 701; 614 NW2d 607 (2000). However, questions of law in a worker’s compensation case are reviewed de novo and the wcac’s decision may be reversed if based on erroneous legal reasoning or the wrong legal framework.
 
 DiBenedetto v West Shore Hosp,
 
 461 Mich 394, 401-402; 605 NW2d 300 (2000); MCL 418.861a(14).
 

 On appeal to this Court, defendant first argues that the magistrate’s determination that plaintiff was avoiding available employment should have resulted in the total suspension of wage-loss benefits. We disagree.
 

 In rejecting defendant’s argument, the magistrate and the WCAC relied on the wcac’s earlier decision in
 
 Mayse v Wirt Transport Co,
 
 1997 Mich ACO 528. In
 
 Mayse,
 
 the magistrate found that the employee was able to work within the restrictions placed on him by his treating neurosurgeon and that the employee was avoiding actual wages.
 
 Id.
 
 Specifically, the employee refused to contact potential employers outside his hometown of Shelby, Michigan, if it required a long-distance telephone call.
 
 Id.
 
 The employee also refused to travel to his rehabilitation counselor’s office to make job inquiries.
 
 Id.
 
 As a result, the magistrate in
 
 Mayse
 
 determined the employee’s postinjury earning capacity and reduced his benefits by the amount of actual wages he was avoiding.
 
 Id.
 

 On appeal the wcac affirmed, concluding that an employee who avoids work breaks the causal link between the work-related injury and the reduction in earning capacity.
 
 Id.
 
 In reaching this conclusion, the
 
 *605
 
 wcac quoted the following language from
 
 Haske, supra
 
 at 658-659: “Unemployment or reduced wages must be causally linked to work-related injury, and a plaintiff may not reject actual wages reasonably offered or avoid or refuse actual wages.”
 

 In
 
 Haske, supra
 
 at 643, our Supreme Court undertook an analysis of how an individual could demonstrate a compensable disability as contemplated by the Worker’s Disability Compensation Act (wdca), MCL 418.101
 
 et seq.
 
 Specifically, our Supreme Court reviewed the language of MCL 418.301(4), which provides: “As used in this chapter, ‘disability’ means a limitation of an employee’s wage earning capacity in work suitable to his or her qualifications and training resulting from a personal injury or work related disease. The establishment of disability does not create a presumption of wage loss.”
 

 Reviewing the above statutory language, the
 
 Haske
 
 Court ruled that to prove a compensable disability, an applicant must be able to prove wage loss.
 
 Haske, supra
 
 at 634. Wage loss is proved by establishing a reduction in earning capacity.
 
 Id.
 
 at 654.
 

 To prove wage loss, an employee demonstrates that, as a consequence of work-related injury or disease, he has suffered a reduction in his earning capacity. The amount of benefits is based on the employee’s actual wage loss.
 

 In application, these basic principles operate to require that an employee must establish (1) a work-related injury, (2) subsequent loss in actual wages, and (3) a causal link between the two. Proof of the three elements will establish that an employee can no longer perform at least a single job within his qualifications and training, thus satisfying the first sentence of subsection 301(4),
 
 and
 
 that he has suffered a loss in wages, satisfying the second sentence of subsection 301(4). Consistent with the language of subsection
 
 *606
 
 301(4) proofs sufficient to permit the magistrate to find that the subsequent wage loss is attributable to the work-related injury establish a compensable disability. Absence of residual earning capacity is not part of the threshold definition of disability.
 
 [Haske, supra
 
 at 634-635 (emphasis in original).]
 

 The
 
 Haske
 
 Court went on to conclude that where “the employee has carried his burden of proving wage loss, he will, as a practical matter, have proven that he is unable to perform a single job within his qualifications and training, and therefore, that he is disabled.”
 
 Id.
 
 at 662. Further, the Court noted that the plaintiff employee is only required to show that there is a direct link between lost wages and the work-related injury, and that a plaintiff need not demonstrate an absence of residual earning capacity.
 
 Id.
 
 at 661. “Whether disability is total or partial, actual loss of wages causally linked to a work-related injury is loss of wage-earning capacity” as contemplated by MCL 418.301(4).
 
 Haske, supra
 
 at 662.
 

 At issue in the present case is the
 
 Haske
 
 Court’s following statement, by way of footnote:
 

 An employer may refute the causal connection between the partial disability and the employee’s unemployment with evidence that other factors are the cause of the unemployment, e.g., an employee’s ailments that are unrelated to his previous employment or malingering.
 
 [Sobotka v Chrysler Corp (After Remand),
 
 447 Mich 1,] 22, and 26, n 26; 523 NW2d 454 (1994) (Boyle, J., lead opinion) (relying on 1C Larson, Workmen’s Compensation, § 57.12[e], p 10-56), 53 (Brickley J., dissenting). However, where the employer chooses to produce evidence regarding the availability of specific employment, such evidence is admissible solely to refute the causal connection.
 

 
 *607
 
 Where the plaintiff is unemployed and the magistrate credits a link between disability and actual lost wages, evidence of residual earning capacity is not probative of any material issue.
 

 The result under subsection 301(5)(a) when an employee refuses a reasonable offer of work, is to deny benefits. Cf. Gillman,
 
 The rise and fall of reasonableness: Favored employment in Michigan workers’ compensation,
 
 1 Cooley L R 177, 208 (1982) (citing case law before the enactment of subsection 301 [5] [a] reducing benefits where an employee refused favored work within his capacity).
 
 [Haske, supra
 
 at 662, n 38.]
 

 Moreover, Justice Riley, in a partial concurrence and dissent, expounded on Justice Boyle’s reasoning in
 
 Haske
 
 by way of footnote:
 

 Therefore, if the employee did not seek out the lesser-paying positions because of malingering, and was unemployed as a consequence, the employee would only receive worker’s compensation for the reduction in his earning capacity that he suffered because of his injury, but he would not recover the remaining lesser wage that he could have earned had he sought work. See, e.g.,
 
 Williams v Blitz Construction Co,
 
 1995 Mich ACO 1169 (reducing an award for an unemployed, injured claimant from $250 a week to $100 a week where there was a lesser paying job actually available within the claimant’s qualifications and training that he was not performing). The majority appears to reject this possibility by requiring that either this employee receive his full previous wage or nothing. See n 38 on p 662 (“Where the plaintiff is unemployed and the magistrate credits a link between disability and actual wage loss, evidence of residual earning capacity is not probative of any material issue”). This is not, in my opinion, consistent with the act’s requirement that the employee demonstrate wage loss by proving a reduction in earning capacity.
 
 [Haske, supra
 
 at 684-685, n 8.]
 

 
 *608
 
 In
 
 Haske,
 
 our Supreme Court did not address the precise question defendant raises here, namely, whether a plaintiff employee’s work avoidance must translate into a suspension of wage-loss benefits.
 
 [2]
 
 Indeed, the
 
 Haske
 
 Court’s comments appeared confined to the question whether a plaintiff employee had demonstrated the requisite causal link between a work-related injury and wage loss to the extent that a
 
 compensable
 
 disability was proved.
 

 However, several panels of the WCAC have applied
 
 Mayse
 
 and
 
 Haske
 
 to support a conclusion that a partial rate of compensation may be available on a showing that a claimant is avoiding work. See Welch, Worker’s Compensation in Michigan: Law & Practice, § 8.2;
 
 Korson v Gray & Co,
 
 2000 Mich ACO 542 (Commissioner Kent concurring);
 
 Reder v RC Hendrick & Sons, Inc,
 
 1998 Mich ACO 290. The wcac relied on
 
 Mayse
 
 to conclude that plaintiff’s wage-loss benefits should not be completely suspended. Defendant contends that this was error. We disagree and hold that
 
 *609
 
 the wcac did not commit an error in legal reasoning to the extent that reversal is warranted. Indeed, the wcac correctly observed that this case implicates MCL 418.301(4), rather than MCL 418.301(5)(a).
 
 [3]
 
 The latter statutory provision proscribes an award of benefits where a claimant “refuses” a bona fide offer of reasonable employment without good and reasonable cause during the period of such refusal. In the instant case, the record is devoid of any evidence of a bona fide offer of reasonable employment by another employer or of a refusal by plaintiff of any such offer. Under such circumstances, we cannot conclude that the wcac’s decision to award partially reduced benefits is inappropriate where there has not been an overt refusal of reasonable employment, but instead only a failure to seek reasonable employment. We defer to the wcac’s expertise because we are not persuaded that its decision was based on erroneous legal reasoning.
 
 Mudel, supra
 
 at 703;
 
 Jones-Jennings v Hutzel Hosp (On Remand),
 
 223 Mich App 94, 105; 565 NW2d 680 (1997). On the basis of the foregoing, we reject defendant’s claim that plaintiff’s wage-loss benefits should have been completely suspended.
 

 
 *610
 
 Defendant next argues that the wcac erred as a matter of law in affirming what defendant characterizes as the magistrate’s misapplication of the significant-contribution standard of
 
 Gardner, supra.
 
 According to defendant, plaintiff’s psychological disability is compensable only if the work contribution to this disability was greater than the nonwork contribution. We reject defendant’s interpretation of the standard.
 

 MCL 418.301(2) provides in pertinent part: “Mental disabilities . . . shall be compensable if contributed to or aggravated or accelerated by the employment in a significant manner. Mental disabilities shall be compensable when arising out of actual events of employment, not unfounded perceptions thereof.”
 

 To establish a compensable mental disability under the statute, a claimant must prove (1) a mental disability, (2) which arises out of actual events of employment, not unfounded perceptions thereof, and (3) that those events contributed to or aggravated the mental disability in a significant manner.
 
 Gardner, supra
 
 at 52. To determine “whether specific events of employment contribute [d] to, aggravate [d], or accelerate^] a mental disability in a significant manner, the factfinder must consider the totality of the occupational circumstances along with the totality of a claimant’s mental health in general.”
 
 Id.
 
 at 47. The
 
 Gardner
 
 Court further explained:
 

 The analysis must focus on whether actual events of employment affected the mental health of the claimant in a significant manner. This analysis will, by necessity, require a comparison of nonemployment and employment factors. Once actual employment events have been shown to have occurred, the significance of those events to the particular
 
 *611
 
 claimant must be judged against ail the circumstances to determine whether the resulting mental disability is compensable. [id.]
 

 Defendant argues that for employment to have significantly contributed to or aggravated or accelerated a mental disability, employment factors must outweigh nonemployment factors. In other words, defendant claims that either occupational or nonoccupational factors, but not both, may be deemed significant under MCL 418.301(2). We disagree.
 

 As then Chief Justice Cavanagh explained in
 
 Gardner, supra
 
 at 46-47, the “significant manner” requirement “forces a claimant to actually prove a significant factual causal connection between the actual events of employment and the mental disability.” The significant manner requirement imposes a high standard of proof on the claimant.
 
 Id.
 
 at 47-48. We do not agree with defendant’s contention that the employment factors must necessarily outweigh other factors to be deemed “significant.” Because MCL 418.301(2) does not define the term “significant,” we may properly turn to the dictionary to ascertain its plain meaning.
 
 Ryant v Cleveland Twp,
 
 239 Mich App 430, 434; 608 NW2d 101 (2000). The word “significant” is defined as “important; [of] consequence.”
 
 Random House Webster’s College Dictionary
 
 (1992), p 1246. Further, “a” is an indefinite article often used in the sense of “any” and applied to more than one individual object.
 
 Allstate Ins Co v Freeman,
 
 432 Mich 656, 698; 443 NW2d 734 (1989) (Riley, C.J.). Accordingly, we are of the view that the phrase “a significant manner” in MCL 418.301(2) means any important manner or any manner that is of consequence.
 

 
 *612
 
 This definition conflicts with defendant’s claim that the employment factors must make more than a fifty percent contribution to the mental disability. Instead, the statutory language indicates that it is sufficient that employment factors make an important or consequential contribution to the mental illness. As our Supreme Court articulated in
 
 Gardner, supra
 
 at 50, the relevant inquiry for the significant manner requirement has a “substantial subjective element,” and focuses on whether, “[g]iven actual events and a particular claimant, with all the claimant’s preexisting mental frailties, can the actual events objectively be said to have contributed to, aggravated, or accelerated the claimant’s mental disability in a significant manner?” We are satisfied that the magistrate and the wcac correctly concluded that the pertinent employment events bore a “significant relationship” to plaintiff’s ensuing mental disability.
 
 Zgnilec v General Motors Corp (On Remand, After Remand),
 
 239 Mich App 152, 156; 607 NW2d 755 (1999). Accordingly, the wcac correctly applied the significant-contribution standard of
 
 Gardner.
 

 Finally, defendant seeks a remand for a factual determination whether plaintiff’s mental disability arose out of and in the course of employment or whether it was due to brooding and worrying over the effects of the injury. We are not persuaded that defendant is entitled to a remand. Indeed, defendant is correct that the mental disability must arise out of and in the course of employment to be compensable.
 
 Corbett v Plymouth Twp,
 
 453 Mich 522, 550-551; 556 NW2d 478 (1996). However, a review of the magistrate’s opinion reveals that the magistrate was aware of this rule and applied it. Because the magistrate found that
 
 *613
 
 the mental disability arose out of plaintiff’s employment, defendant’s argument lacks record support and the wcac did not err in rejecting defendant’s appellate challenge.
 

 Affirmed.
 

 [1]
 

 The wcac affirmed the magistrate’s finding that plaintiff was avoiding work. Plaintiff has not cross appealed from the wcac’s decision.
 

 [2]
 

 In the present appeal, plaintiff contends in his appellate brief that the magistrate and the wcac “properly reduced . . . Plaintiffs right to continuing weekly benefits, consistent with the Commission’s own decisions on point.” Thus, the precise issue whether the work-avoidance doctrine developed by the wcac is viable and has a proper basis in Michigan’s worker’s compensation jurisprudence is not before us. However, we note that there are conflicting opinions in the wcac regarding whether benefits should be suspended or reduced on the basis of work avoidance, depending on the factual circumstances of each case. For instance, in
 
 Shrider v Michigan Motor Exchange,
 
 2000 Mich ACO 504, a split two-to-one panel of the wcac concluded that a claimant who avoided work was not entitled to an award of benefits where a causal link did not exist between the claimant’s wage loss and the work-related injury. Commissioner Kent dissented from the majority’s holding. See also
 
 Pacheo v Sam’s Club,
 
 2001 Mich ACO 245 (recognizing that “an employee has an obligation to mitigate the employer’s loss from a work injury As part of this obligation an employee may not engage in conduct which forecloses an employment offer[,]” or the employee will be denied benefits for the duration of the refusal);
 
 Rich v Cold Springs Farm, Inc,
 
 2001 Mich ACO 134.
 

 [3]
 

 MCL 418.301(5)(a) provides:
 

 (5) If disability is established pursuant to subsection (4), entitlement to weekly wage loss benefits shall be determined pursuant to this section and as follows:
 

 (a) If an employee receives a bona fide offer of reasonable employment from the previous employer, another employer, or through the Michigan employment security commission and the employee refuses that employment without good and reasonable cause, the employee shall be considered to have voluntarily removed himself or herself from the work force and is no longer entitled to any wage loss benefits under this act during the period of such refusal.