ONIJI *v.* STUDEBAKER CORPORATION.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW—PER-
SONAL INJURIES — INTENTIONAL OR WILFUL MISCONDUCT — EVI-
DENCE—SUFFICIENCY.

In proceedings under the workmen's compensation act for
compensation for the loss of the first phalange of claim-
ant's thumb due to accidental burning, subsequent rotting
and necessitated amputation, where it appeared that claim-
ant, a foreigner who spoke English very imperfectly, had
the thumb treated by defendant's physician on the day of
the burning and on the two days following, and did not
come back again for two months and the thumb subse-
quently rotted so as to necessitate the amputation thereof,
and the testimony of the physician and of claimant was
conflicting as to whether claimant was told to come back
again at the time of the second treatment, and the phy-
sician testified that no interpreter was present and he had
difficulty in understanding claimant, the evidence tended
to support the finding of the industrial accident board
that claimant was not guilty of wilful or intentional mis-
conduct in failing to procure medical treatment.[1]

2. SAME—EVIDENCE—SUFFICIENCY.

Evidence *held,* insufficient to show that under any treat-
ment the injury could have been healed in three weeks'
time so as to authorize an award for an ordinary infec-
tion and not for loss of one-half of the thumb.

3. SAME.

The real question for the determination of the Supreme
Court on appeal in proceedings for compensation under the
act is whether there is evidence in the record to support
the findings of the industrial accident board, and the ques-
tion of the weight of the evidence will not be considered.

Certiorari to Industrial Accident Board. Submitted
April 5, 1917. (Docket No. 45.) Decided May 31,
1917.

[1] On construction and effect of workmen's compensation acts
generally, see note in L. R. A. 1916A, 23.

John Oniji presented his claim for compensation against the Studebaker Corporation for injuries received in defendant's employ. From an order awarding compensation, defendant brings certiorari. Affirmed.

*Roy C. Gamble,* for appellant.

*Sol Blumrosen,* for appellee.

STONE, J. This proceeding is brought here to review a decision of the industrial accident board affirming an award of the committee of arbitration granting claimant as compensation the sum of $9.85 a week for a period of 30 weeks. There is no question that the Studebaker Corporation was in the month of December, 1915, engaged in business in Detroit and was subject to the provisions of Act No. 10, Extra Session 1912 (2 Comp. Laws 1915, § 5423 *et seq.*). On or about the 14th day of said month the claimant, while in the employ of said corporation and working in its heating room, met with an accident arising out of and in the course of his employment. The injury was a burn of the right themb. On or about December 18, 1915, claimant went to the physician at the hospital in the plant of the corporation, and, upon examination, it was found that claimant had a bad infection at the end of said thumb. At that time the wound was opened and dressed, and claimant was instructed to return for further treatment. He went to the said hospital again on December 19th, and again on December 20th, at both of which times the wound was dressed. The testimony shows that on December 20th the wound was draining and showed slight improvement. The foregoing facts are undisputed, but from this' time on the evidence presented by the contending parties is somewhat at variance. It should be stated that the claimant is a foreigner, and it is apparent

from the record that he understands the English language very imperfectly. The physician for the appellant testified that on the visit of the claimant on December 20th, at the office of the company hospital, he was instructed to return for further treatment. The claimant testified that he was instructed *not* to return. The testimony shows that after the failure of claimant to return for further treatment, as it was claimed he was instructed to do by the physician, an investigator of the appellant was sent out to find claimant, but the search was unavailing.

It appears that claimant next appeared at the company hospital for treatment on or about February 22, 1916, at which time the end of his right thumb had practically rotted off, and amputation of the first phalange of the thumb was necessary. The amputation was made by a surgeon at the expense of appellant on February 24, 1916. It is the claim of appellant that, while the claimant did not return to the hospital of the company for treatment between December 20, 1915, and February 22, 1916, he sought the services of no other physician, during which time necrosis of his right thumb was taking place. There was testimony of the claimant, in his broken English, that after he was told not to return by the physician on December 20th that he visited and was treated by another doctor.

The appellant claiming that the loss of the first phalange of claimant's right thumb was not the result of the injury arising out of and in the course of his employment, but was a result of his refusal of medical services offered by the appellant, has brought the case here for review. The assignments of error are as follows:

"(1) That the said industrial accident board erred in holding that the loss of the first phalanx of claimant's right thumb is the result of an injury arising out of and in the course of his employment.

"(2) That the industrial accident board erred in allowing compensation for a period longer than the usual length of time for an ordinary infection to heal.

"(3) That the industrial accident board erred in holding that a personal injury was the proximate cause of the loss of the first phalanx of claimant's right thumb.

"(4) That the said industrial accident board erred in allowing compensation for one-half of the thumb, for the reason that the loss of one-half of his thumb is the result of his refusal to submit to medical attention."

1. While the appellant admits that the claimant met with an accident arising out of and in the course of his employment, it is claimed that this accident resulted in a minor injury only; that claimant made no effort to procure medical treatment for a period of six weeks; that during this time the thumb was continually growing worse; and that claimant was guilty of such wilful misconduct as prohibits him from receiving the benefits of the act. It is also urged that no operation should have been necessary in the case.

To this claimant replies that, inasmuch as the findings of fact of the board are conclusive upon this court, if supported by any evidence, it only remains to inquire whether there exists any evidence which will support the findings of fact. It is said by claimant that the following evidence is to the effect that the company's physician told claimant *not* to return for further medical treatment after December 20, 1915, and that this court will not weigh the evidence. The claimant testified, referring to the company's physician, as follows:

"*Q.* When did you next see him?

"*A.* I was four or five times, I think. I was four times; on 20th quit. He says, 'Don't come any more.'

"*Q.* On the 20th he told you not to come any more?

"*A.* Yes; then me no come no more.

"*Q.* Did you quit the company then?

"*A.* Yes; not quit, but don't go to the doctor, to the company doctor.  *  *  *
"*Q.* The last time you worked?
"*A.* Yes; doctor told me don't come; I don't come after that.  *  *  *
"*Q.* Then you did not go to see the doctor any more?
"*A.* No; because he told me not to come any more. *  *  *
"*Q.* Why didn't you see some one? Why didn't you go to see the doctor after December 20th?
"*A.* He told me not to come any more; 'it is all right.'
"*Q.* He said your thumb was all right?.
"*A.* Yes; he said, 'No come.' "

The physician testified that he had no interpreter when talking with claimant, and that he had some difficulty in talking with him—in making himself understood. It seems to us that this evidence tends to support the finding of the board that claimant was not guilty of intentional or wilful misconduct. Bearing in mind the fact that the claimant was a foreigner, and, as appears, unfamiliar with the English language, it cannot be said that there was no evidence supporting the findings. Upon this subject the facts were quite similar to those in *Poniatowski* v. *Stickley Bros. Co.,* 194 Mich. 294 (160 N. W. 569).

2. It is next urged by appellant that it appears that the infection at the time claimant called at the hospital was only an ordinary localized infection, and that an ordinary infection under the treatment usually administered in such cases continues for about three weeks; therefore, if entitled to any compensation, it should have been only for the period an ordinary infection would incapacitate, and not for the loss of one-half of the thumb.

The record does not show that the thumb would have been saved if the claimant had returned to the company's physician for treatment after December

20th. Appellant concedes "that no human being can absolutely say that the thumb would have entirely recovered from the original infection in three weeks' time," but claims that it is a reasonable and fair assumption that it would have done so. One of the attending physicians testified as follows:

"*Q.* On the 20th you say you put a note down, 'Severe infection'?

"*A.* On the 18th. * * *

"*Q.* His condition had not changed much on the 20th?

"*A.* No; there was just a slight improvement, all you could expect.

"*Q.* So that the finger was convalescing?

"*A.* No; I would not say convalescing; it was draining; the pus has to come out before there can be an improvement.

"*Q.* Doctor, the science of medicine, like theology, is not an exact science, is it?

"*A.* It is not. * * *

"*Q.* You have known cases where an infection of this sort did not heal in three weeks' time?

"*A.* I have known cases where there was some direct injury to the bone like a foreign body or something of that sort where necrosis happened in spite of the best medical care, where there would be a foreign body, a piece of steel or something imbedded in the periosteum, but never a simple infection have I seen treated result in a necrosis of the bone. * * *

"*Q.* Doctor, infection, severe infection to necessitate the placing of a drain to draw off the pus, is entirely problematical as to period of disability?

"*A.* If for any reason you do not get proper drainage, yes. Drainage is an important feature. The initial infection is never in the bone. The secondary infection is liable to be, under poor medical treatment. That is the present theory, and it works out ordinarily well. It is the common sense treatment. * * *

"*Q.* When you amputated his thumb there was nothing to indicate that the bone had been pierced in any way, or even touched, was there?

"*A.* It would be impossible to tell that. The bone was just a rotten mass at that time, showing that the infection had traveled into the bone."

It does not appear from the evidence that the injury would have been healed in three weeks' time, under any treatment.

3. It is urged that the finding of the board was contrary to the weight of the evidence. We have said so often the real question is whether there is evidence in the record to support the finding, and that we are not concerned with the weight of the evidence, that we shall not discuss the matter. *Rayner* v. *Furniture Co.*, 180 Mich. 168 (146 N. W. 665, L. R. A. 1916A, 22, Am. & Eng. Ann. Cas. 1916A, 386) ; *Bayne* v. *Storage Co.*, 181 Mich. 378 (148 N. W. 412).

4. It is here urged by appellant that the refusal to return and take proper treatment injects a new cause for the loss of claimant's thumb, and that the loss cannot be said to be the result of the accident which arose out of and in the course of the employment, but was the result of his refusal of medical treatment.

The appellee replies that the evidence of refusal of medical treatment was a disputed question of fact, which the board passed upon adversely to appellant. We have already referred to the testimony of claimant that he sought treatment of another physician after he claims he had been dismissed by the company's physician. This testimony is somewhat vague and indefinite, but we cannot say that it was not evidence in the case which the board had the right to consider.

For the reason that there is in the record evidence to support the finding and return of the board that the claimant suffered the loss of one-half of his right thumb, as the result of an accident arising out of and in the course of his employment, and that he was not guilty of wilful or intentional misconduct, the decision of the board is affirmed.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.