## LOPUCKI v FORD MOTOR COMPANY

Docket No. 47952. Submitted June 24, 1981, at Detroit.—Decided September 9, 1981.

Anthony Lopucki, a Ford Motor Company employee, committed suicide. His wife, Irene Lopucki, filed a claim with the Bureau of Workers' Disability Compensation, alleging that decedent's death was a suicide which arose out of and in the course of his employment with Ford Motor Company. The administrative law judge awarded benefits to Mrs. Lopucki and the Workers' Compensation Appeal Board affirmed. Ford Motor Company appeals by leave granted. *Held:*

1. Death resulting from suicide is compensable under the Worker's Disability Compensation Act provided it can be determined that the employment aggravated, accelerated or combined with the employee's state of mind which ultimately resulted in the suicide.

2. The appeal board did not err in finding that decedent's death arose out of and in the course of his employment. The findings are supported by competent evidence in the record and are, therefore, conclusive. Decedent's death is compensable under the act.

3. Decedent's conduct did not rise to the level of intentional and wilful misconduct.

Affirmed.

1. WORKERS' COMPENSATION — MENTAL DISORDER — WORK-RELATED INJURY — SUBJECTIVE TEST — STATUTES.

A worker is entitled to workers' compensation benefits for a

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Workmen's Compensation § 301.

Mental disorders as compensable under workmen's compensation acts. 97 ALR3d 161.

[2] 82 Am Jur 2d, Workmen's Compensation §§ 507, 517, 556.

[3-5] 82 Am Jur 2d, Workmen's Compensation §§ 310, 514.

Suicide as compensable under workmen's compensation act. 15 ALR3d 616.

[6, 8] 82 Am Jur 2d, Workmen's Compensation §§ 552, 631.

[7] 81 Am Jur 2d, Workmen's Compensation §§ 231, 235.

82 Am Jur 2d, Workmen's Compensation § 518.

[8] 82 Am Jur 2d, Workmen's Compensation § 476 *et seq.*

mental disorder where he is found to be disabled, the occurrence of a personal injury is established, and it is factually established, by a strictly subjective causal nexus, that the worker honestly, *though perhaps mistakenly*, perceives that a physical or mental personal injury incurred during the ordinary work of his employment caused by his disability and that he therefore cannot resume his normal employment (MCL 418.301; MSA 17.237[301]).

2. WORKERS' COMPENSATION — PREEXISTING CONDITION — COMPENSABILITY.

Three questions of fact and law must be resolved by the decision maker in determining whether a disability involving a preexisting condition arose out of employment: (1) is the claimant disabled; (2) if so, is the claimant disabled on account of some personal injury; and (3) did the claimant's employment aggravate, accelerate, or combine with some internal weakness or disease to produce the personal injury?

3. WORKERS' COMPENSATION — SUICIDE — COMPENSABILITY.

A three-part test is to be applied in determining whether a suicide arose out of and in the course of the victim's employment: 1) is the employee dead on account of suicide; 2) if so, did the employee commit suicide on account of some personal injury, physical or psychological; and 3) did the employee's employment aggravate, accelerate or combine with some internal weakness or disease to produce the state of mind which ultimately chose suicide?

4. WORKERS' COMPENSATION — SUICIDE — DEPENDENT'S RIGHT TO BENEFITS.

A dependent claimant is entitled to workers' compensation benefits where an employee committed suicide if it is factually established that the employee honestly perceived that some personal injury, physicial or psychological, occurred during work which caused him to take his life.

5. WORKERS' COMPENSATION — SUICIDE — COMPENSABILITY.

Death resulting from suicide is compensable under the Worker's Disability Compensation Act provided it can be determined that the employment aggravated, accelerated or combined with the employee's state of mind which ultimately resulted in the suicide.

6. WORKERS' COMPENSATION — WORKERS' COMPENSATION APPEAL BOARD — FINDINGS OF FACT.

Findings of fact of the Workers' Compensation Appeal Board are

conclusive if supported by any competent evidence in the record (Const 1963, art 6, § 28; MCL 418.861; MSA 17.237[861]).

7. WORKERS' COMPENSATION — INJURIES — MISCONDUCT — STATUTES.

Injuries which are the result of an employee's own acts are compensable under the Workers' Disability Compensation Act unless they rise to the level of intentional and wilful misconduct (MCL 418.305; MSA 17.237[305]).

8. WORKERS' COMPENSATION — MISCONDUCT.

The question of intentional and wilful misconduct in a workers' compensation case is a factual matter to be determined by the Workers' Compensation Appeal Board, which determination is conclusive.

*Goodman, Eden, Millender & Bedrosian* and *Gary Granader* (of counsel), for plaintiff.

*Hayim I. Gross* and *Carl G. Meyers,* for defendant on appeal.

Before: J. H. GILLIS, P.J., and BASHARA and K. N. SANBORN,* JJ.

BASHARA, J. Ford Motor Company (Ford) appeals, by leave granted, from a Workers' Compensation Appeal Board decision affirming an administrative law judge's award of benefits to Irene Lopucki where her husband, Anthony Lopucki, committed suicide.

The first issue which must be resolved is whether death resulting from suicide is compensable under Michigan's Worker's Disability Compensation Act. The act, MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.,* does not specifically address the issue. Nor have the appellate courts of this state conclusively arrived at the test to be applied in determining the compensability of death resulting from suicide under the act.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

The only case to address the issue is *Trombley v Coldwater State Home & Training School,* 366 Mich 649; 115 NW2d 561 (1962), in which an award of compensation was affirmed by an equally divided Court. There, the employee was an attendant nurse of mentally defective patients. As a result of complaints by a patient's relatives of injuries suffered which were possibly attributable to Mr. Trombley, a legislative investigation was held.

Trombley became depressed over legislative interrogation of the issue. One evening, he saw a television broadcast indicating that the investigation would continue. He made no comment, but threw up his hands and went to bed. Early the next morning, he committed suicide by shooting himself.

The appeal board affirmed an award of benefits, holding that death was due to the legislative inquiry. The board also found that the death was associated with an uncontrollable impulse and was not a voluntary action.

Justice CARR's opinion for reversal would award compensation only if the suicide was the result of an irresistible impulse. The opinion stated:

"These foregoing decisions are fairly typical of cases from other States recognizing the general rule that workmen's compensation is not recoverable because of the suicide of an employee injured in the course of his employment, such injury arising therefrom, unless as a proven result the suicide has occurred in a moment of insane frenzy or because of irresistible impulse. Deliberate planning of an act of suicide, with mental ability to understand the nature of the act, involves the introduction of an intervening cause in the chain of circumstances to which cause of death must be attributed." *Trombley, supra,* 660.

The opinion by Justice SOURIS for affirmance urged adoption of a rule which allows payment of benefits "upon a showing that the work-connected mental disorder so impaired the victim's reasoning faculties that his act of suicide was not voluntary". *Trombley, supra,* 669. A 3-3 split, with two of the justices abstaining, resulted in affirmance of the appeal board's award of compensation.

Professor Arthur Larson has named the two approaches taken in *Trombley* the "voluntary wilful choice test" and the "chain-of-causation test". He explains the test as follows:

"At one time the field was dominated by the voluntary wilful choice test, sometimes called the rule in *Sponatski's Case,* under which compensation in suicide cases was not payable unless there followed as the direct result of a physical injury an insanity of such violence as to cause the victim to take his own life through an uncontrollable impulse or in a delirium of frenzy without conscious volition to produce death. This doctrine was gradually displaced as majority rule by the chain-of-causation test, which found compensability if the injury caused the deranged mental condition which in turn caused the suicide." 1A Larson's Workmen's Compensation Law, § 36.10. (Footnotes omitted.)

Larson claims that, whatever the approach taken, "[t]he issue boils down to one of proximate versus independent intervening cause". *Id.*

We require a different approach. Due to the Michigan Supreme Court's decision in *Deziel v Difco Laboratories, Inc,* 403 Mich 1; 268 NW2d 1 (1978), the theory of an intervening intermediate cause of the suicide is not a viable theory in Michigan. Such theory assumes the existence of a rational part of the brain which chooses suicide despite the survival instinct and this rational portion of the brain is the "actual" cause of the

suicide. The *Deziel* decision eliminated the require-
ment of showing any "actual" causal nexus be-
tween the employement and the injury. It is now
sufficient if a strictly subjective causal nexus is
supplied. If it is factually established that a claim-
ant honestly, though mistakenly, perceived some
personal injury incurred during his employment
caused his disability, then he is entitled to com-
pensation. *Deziel, supra,* 26.

Therefore, we need go no further than to apply
the three-step analysis of *Deziel* to facts involving
suicide. The three-step analysis of *Deziel* is as
follows:

" '1) Is the claimant disabled?

" '2) If so, is the claimant disabled on account of some
"personal injury"?

" '3) Did the claimant's employment aggravate, accel-
erate, or combine with some internal weakness or dis-
ease to produce the personal injury?' " *Deziel, supra,* 10.

Applying this test to a suicide case requires simply
substituting the suicide for a disability. The test
then becomes:

1) Is the employee dead on account of suicide?

2) If so, did the employee commit suicide on
account of some personal injury, physical or psy-
chological?

3) Did the employee's employment aggravate,
accelerate or combine with some internal weak-
ness or disease to produce the state of mind which
ultimately chose suicide?

The claiment is entitled to compensation if it is
factually established that the employee honestly
perceived that some personal injury, physical or
psychological, occurred during work which caused
him to take his life.

The subjective causal nexus will have to be

established by testimony of those who knew and spoke to the deceased prior to the suicide, which testimony indicates that the deceased's state of mind (the personal injury) was such that he took his own life for employment-related reasons, actual or honestly though mistakenly perceived by the employee.[1]

This analysis ignores the voluntary versus involuntary approach which is the basis of both tests described by Professor Larson. It is our belief that suicide is always "voluntary" to the extent that it never occurs by accident nor by the physical act of another. The mind makes a choice between continuation of the status quo or termination.

We conclude that death resulting from suicide is compensable under the act, provided it can be determined that the employment aggravated, accelerated or combined with the employee's state of mind which ultimately resulted in the suicide.

It is left to us, then, to resolve whether the appeal board erred in finding that death in the instant case arose out of and in the course of decedent's employment. We initially note that findings of the appeal board are conclusive if supported by any competent evidence in the record. *Derwinski v Eureka Tire Co,* 407 Mich 469; 286 NW2d 672 (1979). Const 1963, art 6, § 28; MCL 418.861; MSA 17.237(861).

The following facts, as found by the appeal board, are supported by competent evidence in the record.

The decedent, Anthony Lopucki, began working

---

[1] Effective January 1, 1982, the Legislature has amended the statute pertaining to mental disabilities. 1980 PA 357, MCL 418.301(2); MSA 17.237(301)(2); MCL 418.401; MSA 17.237(401). We express no opinion as to the effect the amendment will have on the standard enunciated herein. See 60 Michigan Bar J, No 5, p 254 (May, 1981).

for Ford Motor Company in 1950. Beginning as an apprentice toolmaker, he rose to a high-level supervisory position in the experimental car fabrication assembly section. Mr. Lopucki's problems with the company began in 1970. In May of that year, he was moved to a less prestigious job in the experimental garage.

On November 9, 1970, decedent's son was in a serious accident which left him immobilized for seven or eight months. Mrs. Lopucki testified that the accident did not leave the decedent in an unduly depressed state.

He was criticized by his new supervisor, Mr. Younger, in an appraisal dated November 30, 1970. In December of 1970, Mr. Younger discovered that the decedent had been using the company pool car on weekends, in violation of company policy. This resulted in a confrontation between the two men. Mrs. Lopucki testified that her husband was "shaken" after the incident and felt that Mr. Younger was attempting to get him fired.

On January 19, 1971, a security guard observed decedent fueling his personal car from special gas pumps which were to be used exclusively for the purpose of fueling experimental cars. Decedent's conduct at a meeting held on January 22, 1971, was less than exemplary. Decedent claimed his car had run out of gas and that it was an emergency. He called Mr. Younger an uncomplimentary name and both men exchanged heated conversation. As a result, Mr. Lopucki received a reprimand. After this incident and the one concerning the pool car, decedent came home swearing, crying and in a general state of emotional distress. He appeared disappointed in himself and expressed constant fear that he would be fired.

On February 16, 1971, he visited a doctor with

the complaint that he was not sleeping well. The doctor prescribed tranquilizers. On March 1, 1971, Mr. Lopucki was transferred to a nonsupervisory position. He indicated to his wife that the new supervisor was very pleasant, but that his desk was placed right next to the supervisor.

He complained to his wife that the work given him involved duties he performed 20 years ago. He apparently could not adjust to doing the work because he had been away from it for such a long time.

The decedent did not work on Thursday, March 18, 1971, because he was depressed and did not feel like working. He worked on Friday, March 19, 1971. On Sunday morning, Mrs. Lopucki found her husband's body in the family garage. The auto was running and the garage door was closed. There is therefore record support for application of the test heretofore enunciated in this opinion.

The reasoning of the appeal board in the case of *Gahagan v Henry Ford Hospital,* 1977 WCABO 1216 (No 195), though not binding, is helpful. At page 1260, Member Marshall wrote:

"It is, of course, true that where we are confronted with pure hallucinatory experience unprovoked by any work-related stimuli or environmental occurrences then there can be no showing of causation or compensable disability or death. But this is not the case here or in other situations where there are demonstrable employment-related events, conditions, pressures or stresses which precipitate or trigger a psychotic or psychological state and ultimate suicide or which 'aggravated or accelerated or combined with some internal weakness to produce the injury'. *Deziel, supra.* This is a factual finding based upon evidentiary and established facts. Where hallucinatory, delusional or other abnormal psychological and emotional states are traceable psychologically to environmental and other work-related condi-

tions, however innocuous or seemingly trivial from an objective point of view, the burden of proof has been satisfied."

We concur in the conclusions reached by the appeal board that the death of claimant's decedent is compensable.

Ford claims that the use of the pool car and gasoline in violation of company policy, the acts which gave rise to Mr. Lopucki's problems, were purely personal and did not arise out of or in the course of employment. Cases cited by the defendant in support of its position are dissimilar to the facts of the case at bar. *Bradley v Stevens,* 329 Mich 556; 46 NW2d 382 (1951), and *Watson v Aquinas College,* 83 Mich App 192; 268 NW2d 342 (1978), *lv den* 403 Mich 848 (1978), deal with questions of *respondeat superior* and "scope of employment". However, those concepts are not viable in a workmen's compensation analysis. *Thomas v Certified Refrigeration, Inc,* 392 Mich 623; 221 NW2d 378 (1974), *Crilly v Ballou,* 353 Mich 303; 91 NW2d 493 (1958).

The circuitous nature of the argument is revealed by the fact that Ford cites, in support of its argument, the following paragraph from 1A Larson's Workmen's Compensation Law, § 31.00:

" 'When misconduct involves a prohibited overstepping of the boundaries defining the *ultimate work* to be done by the claimant, the prohibited act is outside the course of employment. But when misconduct involves a violation of regulations or prohibitions relating to *method* of accomplishing that ultimate work, the act remains within the course of employment. Violations of express prohibitions relating to incidental activities, such as seeking personal comfort, as distinguished from activities contributing directly to the accomplishment of

the main job, are an interruption of the course of employment.' (Emphasis added.)"

Ford fails to note that the quotation itself refers to "misconduct" and the section from which the quotation is lifted is specifically addressed to the concept of misconduct. If we accept the appeal board's finding that Mr. Lopucki's conduct was not "intentional and wilful", as we must do, then the quoted passage from Larson's addressing misconduct is irrelevant.

Ford also failed to note Larson's introductory section on misconduct cases which explains the relationship between §§ 305 and 301 of Michigan's act:

"Misconduct of the employee, whether negligent or wilful, is immaterial not because it is affirmatively stated to be so in the statutes (although a few contain such language), but because the basic test of coverage is relation of the injury to the employment, with no reference to the personal merits of the parties. The compensation act marks out a circle whose boundaries are fixed by the 'arising out of' and 'in the course of' employment concept. Within that circle there is compensation. Outside there is not. Most acts are simply silent on the entire question of general fault in the employee. There is therefore no occasion to distinguish between negligent fault and wilful fault, since fault itself can have no bearing on the process of drawing the boundaries of compensability." 1A Larson's Workmen's Compensation Law, § 30.10.

The Michigan Legislature has made the decision as to what conduct does not arise out of and in the course of employment by enacting § 305 of the act. The appeal board found that Mr. Lopucki's conduct did not rise to the level of intentional and wilful misconduct. Certainly, Mr. Lopucki's conduct would fall within the dictionary definition of

the term "misconduct". However, the Legislature has determined that injuries which are the result of an employee's own acts are compensable unless they rise to the level of "intentional and wilful misconduct". Since the appeal board found that Mr. Lopucki's conduct did not rise to this level, the case is more akin to cases involving horseplay. See *Crilly v Ballou, supra,* and *Harrison v Tireman & Colfax Bump & Repair Shop,* 395 Mich 48; 232 NW2d 274 (1975). The question of intentional and wilful misconduct is a factual matter to be determined by the appeal board, which determination is conclusive. *Day v Gold Star Dairy,* 307 Mich 383; 12 NW2d 5 (1943).

The decision of the Workers' Compensation Appeal Board is affirmed. Costs to claimant.