DANIEL v DEPARTMENT OF CORRECTIONS

Docket No. 224423. Submitted July 10, 2001, at Lansing. Decided November 2, 2001, at 9:05 A.M. Leave to appeal sought.

Tony J. Daniel, an employee of the Department of Corrections, sought worker's compensation benefits on the basis that he incurred a mental disability following disciplinary proceedings with regard to charges of sexual harassment committed by Daniel during the course of his employment. A magistrate, while noting that Daniel brought his troubles on himself by his own misconduct, awarded benefits on the basis that the discipline and postdiscipline employment events contributed in a significant manner to Daniel's development of a disabling condition of depression, anxiety, and uncontrolled anger. The Worker's Compensation Appellate Commission (WCAC) reversed the magistrate's award, holding that although the disability arose out of and in the course of employment, Daniel should not receive compensation because his conduct prompted the disciplinary proceedings that caused the disability. Daniel appealed by leave granted, alleging that the WCAC erred in applying MCL 418.305, which provides that an employee injured by his intentional and wilful misconduct shall not receive worker's compensation.

The Court of Appeals *held*:

1. The WCAC erred in its interpretation of MCL 418.305. Although there is no question that Daniel acted voluntarily and was disciplined because of his acts, the connection between the acts and the injury was too attenuated for the injury to have occurred "by reason of" his acts. Daniel's behavior did not comprise "intentional and wilful misconduct" as contemplated by MCL 418.305 and defined by the courts.

2. Daniel was injured solely because of his status as an employee. His injury did not occur by reason of his conduct.

3. The phrase "by way of" in the statute does not extend to the origin of the chain of causation but only to the direct cause of the injury.

Reversed.

O'CONNELL, J., dissenting, stated that MCL 418.305 operates to bar Daniel's claim. Daniel engaged in intentional and wilful misconduct

and his resulting mental disability flowed directly and predictably from his behavior. The finding of the WCAC that Daniel was injured by reason of his intentional and wilful misconduct is amply supported by record evidence. Daniel was not injured solely because of his status as an employee. The link between Daniel's misconduct, the disciplinary proceedings, and his ensuing mental disability formed a continuous, unbroken chain of causation for purposes of applying MCL 418.305. The decision of the WCAC was not based on erroneous legal reasoning or the wrong legal framework and should be affirmed.

WORKER'S COMPENSATION — INTENTIONAL AND WILFUL MISCONDUCT.

The phrase "intentional and wilful misconduct" in MCL 418.305 encompasses: acts of gross and reprehensible nature; the type of case where a claimant who is armed pursues a fellow employee or an employer, with the apparent ability to inflict harm; moral turpitude, which is defined as an act of baseness, vileness, or depravity; and the intentional doing of something with knowledge that it is dangerous and with a wanton disregard of consequences.

*Ryan, Podein & Joyce, P.C.* (by *James M. Joyce*), for Tony J. Daniel.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *George H. Weller*, Assistant Attorney General, and *David DeGraw*, Special Assistant Attorney General, for the Department of Corrections.

Before: NEFF, P.J., and O'CONNELL and R. J. DANHOF*, JJ.

R. J. DANHOF, J. Plaintiff Tony J. Daniel appeals by leave granted from the December 9, 1999, opinion and order of the Worker's Compensation Appellate Commission (WCAC) reversing the magistrate's award of worker's compensation benefits. We reverse the WCAC's order.

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

I. FACTS AND PROCEEDINGS

Plaintiff began his employment as a probation officer with defendant Department of Corrections in November 1984. As part of his employment, plaintiff supervised convicted felons to ensure compliance with probation orders. Several times a month plaintiff was required to attend probation violation hearings held in the circuit court, where he would interact with the defense attorneys representing the probationers.

According to the record, one of the incidents giving rise to the instant proceedings occurred on August 30, 1994, when plaintiff attended the Kent Circuit Court for a parole violation hearing. On that day, plaintiff made an inappropriate remark to the female public defender representing the probationer. According to the attorney, plaintiff asked her, "[d]o you want to f..k?" When the attorney rebuffed plaintiff's advances, he told her he was married and if they had an affair it would have to be discreet. Later that day, plaintiff sent the attorney a note in court, telling her that she would have to lose ten pounds before an affair could begin.

On February 10, 1995, plaintiff appeared in court for another parole violation hearing with the same female attorney. According to the attorney, plaintiff made reference to his earlier sexual advance in August 1994, and renewed his request for an affair. Specifically, plaintiff told the attorney, "All I told you was that you had to lose ten pounds." Plaintiff also told the attorney, "you want me, you know you want me."

The attorney subsequently complained about plaintiff's unprofessional conduct to his immediate supervisor, Jayne Price, in February 1995. Three other female attorneys followed suit, also alleging sexual harassment by plaintiff. After notifying plaintiff of the allegations, Price conducted an investigation by interviewing the attorneys and other witnesses. Plaintiff categorically denied each and every allegation of sexual harassment. After conducting her investigation, Price recommended to her area manager, Lois Patten, that a disciplinary conference be held regarding five separate counts of sexual harassment. These counts encompassed the August 30, 1994, incident, the February 10, 1995, incident, as well as allegations that plaintiff sexually harassed two other female attorneys on separate occasions in 1994.[1]

A disciplinary conference was held on June 20, 1995. Present at the conference were plaintiff, a representative from his union, Price, and probation manager Jim Newell, who presided over the conference. On the advice of his union representative, plaintiff did not testify at the disciplinary conference, but continued to deny sexually harassing the attorneys. Following the conference, Newell made the following observations in a memorandum to Patten dated June 21, 1995:

---

[1] Plaintiff was alleged to have told one female attorney that he was attracted to Caucasian women and that he was turned on by a woman's thighs. Plaintiff also asked the attorney if she would date a black man. Plaintiff was also alleged to have asked another attorney, who was pregnant at the time, if she was having a boy or girl. When she indicated that she thought she was having a girl, plaintiff allegedly told her "too bad, a boy means you had deep penetration."

> After thoroughly reviewing the investigator's report, com-
> plainants' statements, and employee Daniel's response to
> questions presented [to] him by the investigator, it is my
> conclusion that there is a strong basis on which to con-
> clude that the [Michigan Department of Corrections] Work
> Rules were violated in the manner described in all five
> counts.

For reasons unclear from the record, plaintiff was
subsequently disciplined for only two of the counts of
sexual harassment with which he was originally
charged. On July 24, 1995, plaintiff was notified in a
memorandum by regional administrator Noreen
Sawatzki that he was suspended for ten days "due to
[plaintiff's] violation of The Department of Correc-
tions Work Rules number 9 and number 12 on August
30, 1994, and February 10, 1995."[2]

Plaintiff returned to work in August 1995 following
his ten-day suspension without pay. In January 1996,
plaintiff began treatment with psychologist Daniel
DeWitt, Ph.D., and was diagnosed as suffering from
depression. Plaintiff thereafter took a leave of
absence from work beginning February 2, 1996.[3] Dur-
ing trial, plaintiff testified that he could not work
because he felt that his life was "out of control."
Plaintiff attributed his depression to Price's not being
supportive of him following the suspension and to the

---

[2] According to the record, Michigan Department of Corrections Work
Rule 9 prohibits "[s]peech, action, gesture or movement that causes physi-
cal or mental intimidation, humiliation, or harassment." Michigan Depart-
ment of Corrections Work Rule 12 prohibits "conduct of an employee
which may adversely affect the reputation of the Department . . . ."

[3] According to the record, DeWitt authorized plaintiff to return to work
in March 1996, but not to his same job because contact with his accusers
would exacerbate his symptoms. Defendant refused to comply with that
request.

"strained" atmosphere he experienced with the attorneys that had accused him of sexual harassment.

In June 1996, plaintiff filed a claim for worker's compensation benefits, alleging that he incurred a mental disability arising from the disciplinary proceedings. After four days of trial, the worker's compensation magistrate made the following observations:

> It is clear to me that [p]laintiff's problems started with his discipline for the improprieties of which he was accused. It is difficult to have much sympathy for this claimant, since he brought these troubles on himself by his own misconduct. But compensation, like the rain, falls on the just and the unjust alike.

The magistrate also found that plaintiff's allegations that he was harassed by the female attorneys following his ten-day suspension were not credible. Finding that "[p]laintiff's discipline, and post-discipline employment events up to February 2, 1996, contributed in a significant manner to [plaintiff's] development of a disabling condition of depression, anxiety, and uncontrolled anger," the magistrate awarded benefits to plaintiff.

On appeal to the WCAC, defendant argued as an affirmative defense that plaintiff was precluded from recovering benefits because he was injured by reason of his intentional and wilful misconduct. See MCL 418.305. The WCAC, in a 2 to 1 decision, agreed, holding that although plaintiff's mental disability arose out of and in the course of his employment, MCL 418.301(1), he should not receive compensation because his misconduct prompted the disciplinary proceedings that caused his injury. Plaintiff chal-

lenges the WCAC's determination that § 305 operates to bar his claim for worker's compensation benefits.

## II. STANDARD OF REVIEW

This Court's review of a decision by the WCAC is limited. *Maxwell v Procter & Gamble*, 188 Mich App 260, 265; 468 NW2d 921 (1991). In the absence of fraud, we must consider the WCAC's findings of fact conclusive if there is any competent evidence in the record to support them. MCL 418.861a(14); *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 701; 614 NW2d 607 (2000). However, questions of law in a worker's compensation case are reviewed de novo and the WCAC's decision may be reversed if it was based on erroneous legal reasoning or the wrong legal framework. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401-402; 605 NW2d 300 (2000); MCL 418.861; MCL 418.861a(14). Questions of statutory construction are reviewed de novo. *Adams v Linderman*, 244 Mich App 178, 184; 624 NW2d 776 (2000).

## III. ANALYSIS

The Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.*, provides compensation for persons suffering injuries arising out of and in the course of employment. MCL 418.301. Unquestionably, the act is to be "liberally construed to grant rather than deny benefits." *DiBenedetto, supra* at 402 (citations and internal quotation marks omitted). However, MCL 418.305 provides: "If the employee is injured by reason of his intentional and wilful misconduct, he shall not receive compensation under the provisions of this act."

Defendant in this case concedes that plaintiff's injury arose out of and in the course of his employment. However, the WCAC erred in its interpretation of MCL 418.305. There is no question that plaintiff acted voluntarily and that he was disciplined because of his acts. However, the connection between the acts and the injury was too attenuated for the injury to have occurred "by reason of" his acts, and his behavior did not comprise "intentional and wilful misconduct" as contemplated by MCL 418.305 and defined by the courts.

The WCAC found that plaintiff's injuries resulted from the discipline imposed by his employer. It then went on to determine that, because plaintiff's own alleged act triggered the discipline, MCL 418.305 precluded awarding him benefits. The WCAC interpreted "by reason of" to extend to the ultimate source of the injury. Basically, this interpretation means that although plaintiff's act, by itself, did not result in injury (as it might have if his alleged target had retaliated physically), the discipline imposed should have been foreseen and was an obvious and expected outcome of the act, and it either merged with the act or formed an unbroken link between the act and the injury. The WCAC made only conclusory statements without factual support that the discipline was foreseeable and inevitable, and it did not discuss whether foreseeability should be determined by the application of either an objective or a subjective standard. The WCAC repeatedly asserted that plaintiff knew he would be disciplined. However, plaintiff has insisted since 1995 that he did nothing wrong, that he made no offensive comments. His victims allege that he made offensive comments multiple times, but until

1995, plaintiff had suffered no adverse consequences from his behavior. The WCAC has the power to engage in qualitative and quantitative analysis of the whole record and make independent findings of fact, but in this case *nothing* in the record supports its finding either subjectively or objectively. *Mudel,* supra at 702-703.

Whether plaintiff obviously would be disciplined is simply not the point. If plaintiff had not been an employee, his act would not have resulted in injury. He was injured solely because of his status as an employee; clearly plaintiff was not injured at the time of his act. The WCAC found that plaintiff's injury was the "direct result of his intentional and wilful misconduct" and that plaintiff's injury "naturally flow[ed] from that wrongful conduct." But the same could be said about any of the cases where workers' "horseplay" or escalating aggression led to injuries, such as *Crilly v Ballou,* 353 Mich 303; 91 NW2d 493 (1958), and *Andrews v General Motors Corp,* 98 Mich App 556; 296 NW2d 309 (1980). In both cases, compensation was granted because the question of "who started it?" was inapposite to the intention of the WDCA. *Crilly, supra* at 322-324; *Andrews, supra* at 559-561. We thus find in this case that plaintiff's injury did not occur by reason of his conduct.

Furthermore, we do not find plaintiff's acts rise to the level of "intentional and wilful misconduct" contemplated by MCL 418.305. A phrase that has acquired a unique meaning at common law is interpreted to have the same meaning when used in a statute dealing with the same subject. *Pulver v Dundee Cement Co,* 445 Mich 68, 75; 515 NW2d 728 (1994). The Legislature is presumed to act with knowledge of

appellate court statutory interpretations. *Gordon Sel-Way, Inc v Spence Bros, Inc,* 438 Mich 488, 505-506; 475 NW2d 704 (1991); *Glancy v Roseville,* 216 Mich App 390, 394; 549 NW2d 78 (1996), aff'd 457 Mich 580; 577 NW2d 897 (1998). Thus, silence by the Legislature for many years following judicial construction of a statute suggests consent to that construction. *Craig v Larson,* 432 Mich 346, 353; 439 NW2d 899 (1989); *Glancy, supra* at 394-395. The language of the current MCL 418.305 has remained virtually unchanged since its original enactment in 1912. See 1912 (1st Ex Sess) PA 10, part II, § 2. It is logical to conclude that the Legislature intended to adopt the judiciary's interpretation of the requirement. *Pulver, supra* at 75.

In this context, "intentional and wilful misconduct" is not defined by the statute, but the phrase has been interpreted in this state to encompass acts of "gross and reprehensible nature," "the type of case where a claimant arms himself with a gun, knife or block of wood and pursues a fellow employee, or an employer, with the apparent ability to inflict harm," "moral turpitude, which is defined as an act of baseness, vileness, or depravity," and "the intentional doing of something with knowledge that it is dangerous and with a wanton disregard of consequences." *Crilly, supra* at 327; *Andrews, supra* at 560-561 (citations and internal quotation marks omitted); *Fortin v Beaver Coal Co,* 217 Mich 508, 510; 187 NW 352 (1922). Plaintiff's alleged behavior, although voluntary, crude, and unprofessional, did not rise to this level. The WCAC found plaintiff in violation of the Michigan Civil Service Rules, but mere violation of a work rule is not enough, especially if the rule was not strictly enforced. *Allen v Nat'l Twist Drill & Tool Co,* 324

Mich 660, 664; 37 NW2d 664 (1949); *Michalski v Central Window Cleaning Co*, 292 Mich 465, 466-467; 290 NW 870 (1940); see also *Shepard v Brunswick Corp*, 36 Mich App 307, 311; 193 NW2d 370 (1971). Plaintiff's history of conduct in this case indicates that the rule was not strictly enforced and there are no facts in the record indicating otherwise.

Finally, we note that *Calovecchi v Michigan*, 461 Mich 616; 611 NW2d 300 (2000), does not control the instant appeal because it did not interpret MCL 418.305. However, the decision in that case does have relevance to the present case. In *Calovecchi*, the plaintiff, a state trooper, was the subject of an internal investigation arising from allegations that he assaulted his wife and drew a gun on his stepson. *Calovecchi, supra* at 618. The plaintiff subsequently alleged that he suffered a mental disability after defendant took away his badge and placed him on administrative leave. *Id.* at 620. The allegations against the plaintiff were then dismissed for unstated reasons. That fact distinguishes *Calovecchi* from the present case, because here, as the WCAC succinctly noted, "plaintiff actually did it." That distinction is significant, not because the two cases are *different*, but because they are *similar*. Under the WCAC's reasoning, a juxtaposition of these two cases would mean that when a plaintiff has suffered a mental injury because of an employer's disciplinary proceedings, if the charges are dismissed the worker may collect compensation. If they are not, the worker is denied compensation because of wilful misconduct. Because the employer determines whether the plaintiff was guilty of the charges, the WCAC's decision encourages a finding of guilt, especially regarding an unsympathetic or

"difficult" employee. An employer may even discipline less tactfully, knowing that an injured employee can be denied compensation because the injury can ultimately be traced to the employee's own act. The focus thus shifts from the cause of the injury to the guilt of the employee, the appropriateness of the discipline, and the employee's reaction to it. This improperly forces the consideration of fault and other issues the WDCA was designed to avert.

The WCAC erred in its conclusion because "by reason of" does not extend to the origin of the chain of causation but only to the direct cause of the injury. The WCAC also erred in applying MCL 418.305 because plaintiff's acts, as they appear in the record, do not amount to "intentional and wilful misconduct" as contemplated by the statute. Thus, even if the WCAC had found evidence that the rule plaintiff violated was strictly enforced, and that plaintiff's conduct rose to "intentional and wilful misconduct" as defined by the courts, the statutory requirement of causation is still not met. Any other interpretation in this case contravenes the purpose and spirit of the WDCA.

Reversed.

NEFF, P.J., concurred.

O'CONNELL, J. (*dissenting*). I respectfully dissent. By repeatedly sexually harassing female attorneys, plaintiff engaged in intentional and wilful misconduct. Moreover, plaintiff's resulting mental disability flowed directly and predictably from his behavior. Allowing "serial sexual harasser[s]" to profit from their misdeeds is an untenable result not contemplated by the Worker's Disability Compensation Act (WDCA), MCL

418.101 *et seq.*[1] Because MCL 418.305 operates to bar plaintiff's claim for worker's compensation disability benefits, I would affirm.

### I. THE WORKER'S COMPENSATION APPELLATE COMMISSION'S DECISION

In a well-reasoned, seven-page written decision, the Worker's Compensation Appellate Commission (WCAC) concluded that plaintiff's reprehensible misconduct barred his claim for worker's compensation disability benefits. The WCAC stated:

> [C]ommon sense dictates that cases of misconduct must undergo an additional evaluation. Justice cries out that a wrongdoer should not be able to profit from his wrongdoing, when he knows what he is doing is wrong and he knows what the consequences of being caught are going to be. In this case, there can be no doubt that plaintiff knowingly committed wrongful acts. He was found to be a serial sexual harasser. Sexual harassment is strictly forbidden by the Michigan Civil Service Rules. The magistrate in this case recognized that Mr. Daniel was a wrongdoer and due no sympathy, having "brought these troubles on himself by his own misconduct." In effect, Mr. Daniel suffered a self-inflicted injury.
>
> It is therefore precisely in a case such as this that Section 305 of the Act should be applied. The rain may indeed, as the magistrate put it, fall on the "just and unjust alike," but as defendant points out, Section 305 puts up an umbrella to prevent compensation from falling on this particular "unjust" claimant. . . . Plaintiff's injury . . . was the direct result of his intentional and wilful misconduct. We therefore agree with defendant that Section 305 operates to deny

---

[1] The Worker's Compensation Appellate Commission characterized plaintiff as a "serial sexual harasser." In my view, granting worker's compensation disability benefits to plaintiff is contrary to the concept of holding an individual accountable for their misconduct.

plaintiff benefits in this case. This is not a case of fault, neg-
lect or inattention—matters the section was not designed to
address. It is instead a case of an individual knowingly
engaging in misconduct—behavior strictly prohibited by
employer rule distributed to all employees. This is espe-
cially important in a mental disability setting. Plaintiff knew
what he was doing was wrong, yet he did it anyway, in a
consistent and repeated pattern over a long period of time,
knowing full well what the consequences of being caught
would be. His own intentional wrongdoing brought on the
subsequent "injury" . . . . Section 305 bars recovery in this
case. [Citation omitted.]

### II. MCL 418.305

MCL 418.305 provides:

> If the employee is injured by reason of his intentional and
> wilful misconduct, he shall not receive compensation under
> the provisions of this act.

The predecessor of § 305 was initially introduced in
1912, as part of the Legislature's original enactment of
our state's worker's compensation legislation. See
1912 (1st Ex Sess) PA 10, part II, § 2.[2] Professor Lar-
son, in his treatise on worker's compensation law, has
noted that Michigan is one of the few states that has
enacted and retained this statutory defense to a claim
for worker's compensation benefits. 2 Larson,
Worker's Compensation Law, § 34.01, pp 34-1—34-2.
The Legislature enacted MCL 418.305 in an apparent

---

[2] The language of the legislation enacted in 1912 is virtually identical to
that of MCL 418.305, providing:

> If the employe[e] is injured by reason of his intentional and wil-
> ful misconduct, he shall not receive compensation under the provi-
> sions of this act.

attempt to prevent employees from using the worker's compensation act as a vehicle for benefiting from their own intentional misconduct. See, generally, *Beauchamp v Dow Chemical Co*, 427 Mich 1, 12-13; 398 NW2d 882 (1986), superseded by statute as stated in *Temple v H J Heinz Co*, 180 Mich App 138, 139; 446 NW2d 869 (1989).

As our Supreme Court has observed, the questions whether an injury arose out of and in the course of employment and whether an employee was injured by reason of his intentional and wilful misconduct are closely "interwoven." *Clem v Chalmers Motor Co*, 178 Mich 340, 344; 144 NW 848 (1914). Consequently, "it . . . follow[s] that the intentional and wilful misconduct which operates to debar the employee from . . . compensation which he might otherwise receive refers to such misconduct within the scope of his employment." *Bischoff v American Car & Foundry Co*, 190 Mich 229, 231; 157 NW 34 (1916) (internal quotation marks omitted).

In the instant case, we are called on to decide whether the WCAC correctly concluded that plaintiff's sexually harassing conduct was "intentional" and "wilful" to the extent that § 305 precludes him from recovering compensation for his work-related mental disability. Whether an individual engaged in wilful and intentional misconduct is a factual determination. *Day v Gold Star Dairy*, 307 Mich 383, 390-391; 12 NW2d 5 (1943); *McMinn v C Kern Brewing Co*, 202 Mich 414, 429; 168 NW 542 (1918); *Lopucki v Ford Motor Co*, 109 Mich App 231, 242; 311 NW2d 338 (1981). In *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691; 614 NW2d 607 (2000), our Supreme Court recognized that the Legislature, through MCL

418.861a(14), has provided the WCAC with authority to make factual findings. *Mudel, supra* at 711-712. In the instant case, both the magistrate and the WCAC concluded that plaintiff engaged in misconduct by sexually harassing female attorneys that he came in contact with as part of his employment. The WCAC, in its legislatively authorized " 'qualitative and quantitative' analysis of the 'whole record,' " *id.* at 699,[3] further found that plaintiff's misconduct was wilful and intentional. The WCAC's factual finding regarding the wilful and intentional nature of plaintiff's misconduct is conclusive and binding on this Court in the absence of fraud. *Id.* at 701.

In any event, a review of the record convinces me that the WCAC's conclusion that plaintiff engaged in wilful and intentional misconduct was well-grounded. Because MCL 418.305 does not define the words "wilful" and "intentional," it is proper for this Court to consult their dictionary definitions to ascertain their plain meaning. *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 470; 521 NW2d 831 (1994). *Random House Webster's College Dictionary* (2d ed, 1997) defines "wilful" as "deliberate, voluntary, or intentional." Similarly, "intentional" is defined as "done with intention or on purpose; intended."

In one of its earliest interpretations of the predecessor of § 305, our Supreme Court observed that "mere negligence, however great, is not wilful misconduct." *Fortin v Beaver Coal Co*, 217 Mich 508, 510; 187 NW 352 (1922), citing *Gignac v Studebaker Corp*, 186 Mich 574; 152 NW 1037 (1915). However, Justice WEIST, speaking for the Court, went on to make the

---

[3] Quoting MCL 418.861a(13).

following comments with regard to what constitutes wilful and intentional misconduct.

> If . . . the conduct occasioning the injury is of a *quasi*-criminal nature, involving the intentional doing of something with knowledge that it is dangerous and with a wanton disregard of consequences, then it is intentional and wilful misconduct. [*Fortin, supra* at 510 (emphasis in original).]

Three decades later, our Supreme Court reiterated that an employee's injuries occasioned by his own wilful and intentional misconduct are not compensable, and further clarified the type of behavior that would invoke what is now § 305:

> Excluded . . . under the terms of the statute are acts of such gross and reprehensible nature as to constitute intentional and wilful misconduct. This presents a situation of an entirely different character than that presented by the playful shove or the roundhouse punch, no matter how tragic may be the latter's unexpected results. And this exclusion of acts of a degree of moral turpitude, it will be observed, is by the legislature itself, not a judicial retrogression to principles of tort. Further than this in definition we do not attempt to go. The precise future line of demarcation will be marked out, in the traditional manner, by the case-to-case decisions. [*Crilly v Ballou*, 353 Mich 303, 327; 91 NW2d 493 (1958) (citation omitted).]

See also *Harrison v Tireman & Colfax Bump & Repair Shop*, 395 Mich 48, 50; 232 NW2d 274 (1975).

Moreover, in *Hammons v Highland Park Police Dep't*, 421 Mich 1, 14, n 20; 364 NW2d 575 (1984), our Supreme Court, by way of footnote, indicated that § 305 will not apply to bar a claimant's recovery of worker's compensation benefits where the individual's actions are "not the product of a free will" because

such actions are not "voluntary or intentional in the sense that the term 'intentional and wilful misconduct' is used in the act." *Id.*, citing MCL 418.305.

In my view, plaintiff's reprehensible misconduct in sexually harassing female attorneys in the workplace was undoubtedly wilful and intentional as contemplated by § 305. Plaintiff was disciplined for making inappropriate sexual advances in the workplace on two separate occasions.[4] Plaintiff, a veteran probation officer with the Michigan Department of Corrections, is hard-pressed to assert that he did not know such behavior was prohibited by defendant, or that he was unaware he was subjecting himself to potential serious consequences.[5] The WCAC found that plaintiff sexually harassed women on multiple occasions, acting with absolute disregard for the consequences of his actions. Accordingly, though I recognize that § 305 has not been applied in the present factual context,[6]

---

[4] As the majority observes, plaintiff was alleged to have engaged in several more instances of misconduct; however, for reasons unclear from the record, he was disciplined for only two.

[5] The majority concludes that "[p]laintiff's history of conduct in this case indicates that the [Michigan Civil Service Rules regarding sexual harassment] w[ere] not strictly enforced . . . ." *Ante* at 105. Neither the magistrate nor the WCAC made any factual findings about the enforcement of the rules. Consequently, I believe it is inappropriate for the majority to make a presumption concerning defendant's enforcement, or lack thereof, of the civil service rules on sexual harassment. *Mudel, supra* at 701 (holding that judicial review of record in worker's compensation case is not "a highly fact-intensive examination").

[6] The vast majority of cases where our Courts have considered the applicability of § 305 and its predecessors involve situations where an individual suffered a work-related physical injury. See, e.g., *Waldbauer v Michigan Bean Co*, 278 Mich 249; 270 NW 285 (1936); *Finney v Croswell*, 220 Mich 637; 190 NW 856 (1922); *Riley v Mason Motor Co*, 199 Mich 233; 165 NW 745 (1917); *Oniji v Studebaker Corp*, 196 Mich 397; 163 NW 23 (1917); *Gignac v Studebaker Corp*, 186 Mich 574; 152 NW 1037 (1915); *Rayner v Sligh Furniture Co*, 180 Mich App 168; 146 NW 665 (1914); *Jendrus v Detroit Steel Products Co*, 178 Mich 265; 144 NW 563 (1913);

in my opinion invocation of the provision is warranted here, where plaintiff voluntarily engaged in reprehensible conduct and incurred a mental disability as a consequence.

Further, I respectfully disagree with the majority's contention that plaintiff was not "injured *by reason of* his intentional and wilful misconduct" to the extent that compensation is barred under MCL 418.305. (Emphasis supplied). Considering the question of causation, the WCAC found that "[p]laintiff's injury . . . was the direct result of his intentional and willful misconduct," and that "[plaintiff's] own intentional wrongdoing brought on the subsequent injury . . . ." In a worker's compensation case matters of causation are factual determinations. See *Staggs v Genesee Dist Library*, 197 Mich App 571, 574; 495 NW2d 832 (1992); *Maxwell v Procter & Gamble*, 188 Mich App 260, 266; 468 NW2d 921 (1991). Whether an individual's wilful and intentional misconduct was responsible for a claimant's injury is also a question of fact. *Chrysler v Blue Arrow Transport Lines*, 295 Mich 606, 609; 295 NW 331 (1940). Consequently, the WCAC's determination that plaintiff was injured by reason of his misconduct is a factual determination conclusive in this Court in the absence of fraud. *Mudel, supra.*

In my opinion, the WCAC's finding that plaintiff was injured by reason of his intentional and wilful misconduct is amply supported by record evidence. For

---

*Andrews v General Motors Corp*, 98 Mich App 556; 296 NW2d 309 (1980); *Chester v World Football League*, 75 Mich App 455; 255 NW2d 643 (1977). But see *Trombley v Coldwater State Home & Training School*, 366 Mich 649, 660, 671; 115 NW2d 561 (1962).

example, Daniel DeWitt, Ph.D., plaintiff's treating psychologist, testified during his deposition:

> In my interviews and sessions with [plaintiff], the precipitating causes of the depression appeared to be prolonged stress relating to accusations of sexual harassment brought against him and subsequent discipline and . . . a feeling that he was vulnerable to other accusations and this was an unresolved issue for the past year on the job.[7]

DeWitt went on to observe that "[plaintiff's] depression was precipitated by work stress, specifically, the accusations and discipline for sexual harassment . . . ." Plaintiff also testified that he began to experience symptoms of depression during the period that the sexual harassment allegations were being investigated by his supervisor, Jayne Price, and that these feelings intensified when he returned to work and experienced strained relations with the attorneys that leveled the allegations as well as his supervisor. Accordingly, the record is clear that plaintiff was not "injured solely because of his status as an employee." *Ante* at 103. Rather, plaintiff can hold no one but himself accountable for his disability, because it was directly precipitated by his own wilful and intentional misconduct.

I am well aware that § 305 has traditionally found application in cases where an employee's work-related physical injury flowed directly and contemporaneously from his wilful and intentional misconduct. For example, in *Fortin, supra,* the decedent deliber-

---

[7] By "unresolved issue" DeWitt was apparently referring to the grievance procedure instituted by plaintiff following his suspension in August 1995. The length and outcome of the grievance procedure is unclear from the record.

ately jumped across a coal pit and was hit by a piece of falling coal. By doing so, the decedent violated a state law prohibiting such action. *Fortin, supra* at 509. Similarly, in *Waldbauer v Michigan Bean Co*, 278 Mich 249; 270 NW 285 (1936), the decedent was killed when he knowingly and deliberately entered a grain bin containing noxious gas. Further, in *Bischoff, supra* at 232-233, the employee's hand was crushed when he climbed a crane, knowing that it was not part of his employment duties to do so. In all three cases, the Supreme Court concluded that the individuals were injured by reason of their wilful and intentional misconduct as contemplated by the statute. To the extent that § 305 has been applied in physical injury cases to bar compensation where such injuries arise "directly" from a claimant's wrongful acts, it may appear that § 305 is limited to such circumstances. However, I share the WCAC's view that § 305 is equally applicable in the present circumstances, where plaintiff's mental disability flowed directly from his misconduct.

A review of the record supports the WCAC's conclusion that plaintiff's sexual harassment "contributed" to his subsequent injury. *Eversman v Concrete Cutting & Breaking*, 224 Mich App 221, 228; 568 NW2d 387 (1997), rev'd on other grounds 463 Mich 86; 614 NW2d 862 (2000). Though plaintiff's injury did not arise contemporaneously from his misconduct, it cannot be disputed that his misconduct was the starting point for the resultant disciplinary proceedings that ultimately caused his injury. Had plaintiff not engaged in sexual harassment, he would not have been subjected to the disciplinary proceedings, and he would not have been suspended from his job. In my view,

the disciplinary proceedings, from which plaintiff's mental disability arose, flowed directly and predictably from plaintiff's misconduct as surely as night follows day. In other words, the link between plaintiff's misconduct, the disciplinary proceedings, and his ensuing mental disability formed a continuous, unbroken chain of causation to the extent that § 305 applies to bar his claim for worker's compensation disability benefits.

Finally, I disagree with the majority's assertion that *Calovecchi v Michigan*, 461 Mich 616; 611 NW2d 300 (2000), "ha[s] relevance to the present case." *Ante* at 105. In my respectful opinion, the majority is ill advised to draw parallels between the instant case and *Calovecchi* regarding the applicability of § 305 where the issue whether § 305 applied to bar the plaintiff's claim for disability benefits was not raised in *Calovecchi* or considered by our Supreme Court. Further, the majority expresses several concerns about the potential effect the WCAC's interpretation of § 305 could have on Michigan's employers' discipline of their employees. In my view, a very troubling effect of the majority's decision today is that employers may refrain from disciplining their employees for fear of having to pay disability benefits if the employee suffers some type of disability resulting from disciplinary proceedings.

On the basis of the foregoing, I reject plaintiff's claim that § 305 does not apply to preclude his recovery of worker's compensation benefits. This Court should afford great deference to the WCAC's interpretation of a provision of the WDCA where it is "not clearly incorrect." *Rahman v Detroit Bd of Ed*, 245 Mich App 103, 117; 627 NW2d 41 (2001). Because I am not

persuaded that the WCAC's decision was "based on erroneous legal reasoning or the wrong legal framework," *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401-402; 605 NW2d 300 (2000), I would affirm.